BOARD OF ROAD COM'RS OF WAYNE COUNTY v. BOARD
OF AUDITORS OF WAYNE COUNTY.

1. CONSTITUTIONAL LAW — LOCAL SELF-GOVERNMENT — COUNTY
ROAD LAW—ROAD COMMISSIONERS—APPOINTMENT.

Act No. 146, Pub. Acts 1905, in so far as it provides in section
6 for the appointment of county road commissioners for Wayne
county by the county clerk and the mayor of Detroit, con-
flicts with the theory of local self-government guaranteed by
the Constitution, and cannot be sustained.

2. OFFICERS—COUNTY ROAD COMMISSIONERS—OFFICERS DE JURE—
RIGHT TO OFFICES.

The board of road commissioners for Wayne county, appointed
by the county clerk and the mayor of Detroit, as provided by
section 6, Act No. 146, Pub. Acts 1905, being appointed in an
unconstitutional manner, are not officers de jure, and are
therefore not entitled to disburse the fund raised by a tax
levied by them, notwithstanding the board of supervisors
recognized them as officers in so far as to spread the tax
levied by them.

3. CONSTITUTIONAL LAW—CONSTRUCTION OF STATUTES — INVALID-
ITY OF PART.

Section 6, Act No. 146, Pub. Acts 1905, providing for the ap-
pointment of road commissioners for Wayne county by the
county clerk and the mayor of Detroit, cannot be considered
as providing for a provisional appointment, neither can the
act be construed as if the commissioners in Wayne county
had been given no legislative powers and sustained as to its
other provisions without further legislation.

4. SAME—SELF-EXECUTING PROVISIONS.

Section 49, art. 4, of the Constitution, providing for county
and township roads, cannot be construed as self-executing in
Wayne county and not self-executing in all other counties.

5. MANDAMUS—DISCRETION TO REFUSE — COUNTY OFFICERS—PAY-
MENT OF DOUBTFUL CLAIMS.

On mandamus by county road commissioners against the
county auditors and treasurer to compel audit and payment
of the accounts and warrants of the road commissioners,
where proceedings are pending to try the title of relators to
their offices, and there has been little action by the public or

public officers which can be said to amount to an acquiescence in their claims, and great confusion is likely to result if it is held that warrants drawn by them must be paid, the court may exercise its discretion in determining whether the writ shall issue.

Certiorari to Wayne; Mandell, Brooke, and Murphy, JJ. Submitted February 19, 1907. (Calendar No. 22,122.) Decided April 30, 1907.

Mandamus by the board of county road commissioners of Wayne county to compel the board of county auditors of Wayne county and Forbes Robertson, county treasurer, to audit and pay a warrant on the county road fund. There was an order denying the writ, and relator brings certiorari. Affirmed.

In 1893, the Constitution of this State was amended by adding to article 4 a new section, to stand as section 49, which section read as follows:

"SEC. 49. The legislature may provide for the laying out, construction and maintenance of county and township roads, and may provide that any road heretofore laid out shall be a county or township road. County roads may be maintained at the expense of the county, and township roads at the expense of the township. County roads shall be under the control of a board of commissioners not to exceed five in number who shall be elected by the people, the number of said commissioners to be fixed by the board of supervisors of the county. For the construction and maintenance of county roads the commissioners may provide for an annual tax not exceeding two dollars upon each one thousand dollars of the assessment roll of the county for the preceding year. No county shall incur any indebtedness or issue any bonds for the construction or maintenance of county roads, except upon a vote of two-thirds of all the supervisors elected, and then to be approved by a majority vote at any general or special election; nor shall any such indebtedness at any time exceed three per cent. of the valuation of the county upon the last preceding assessment roll. The legislature may modify, change or repeal the powers and duties of the township commissioner of highways and

overseer of highways.   The legislature may pass all nec-
essary laws to carry this amendment into effect: *Pro-
vided*, That any act or acts passed by the legislature to
carry this amendment into effect shall provide for a
county and township system, and the county system
shall become operative only in such counties as shall adopt
it by a majority vote of the electors of said county, after the
said question has been submitted to them by a two-thirds
vote of all the members elect of the board of supervisors of
such county, at a general or special election called for that
purpose."

  . The legislature of 1893 passed, and gave immediate
effect to, Act No. 149, Pub. Acts 1893, entitled "An act
to provide for a county and township system of roads and
to prescribe the powers and duties of the officers having
the charge thereof," various provisions of which act have
been since amended.   2 Comp. Laws, §§ 4262–4290; Acts.
Nos. 98, 127, Pub. Acts 1899; Acts Nos. 197, 199, Pub.
Acts 1905.   As originally adopted, the act provided for
an election of commissioners in each county adopting the
system, limited the rate of assessment in Wayne county,
and gave the board of supervisors of that county author-
ity to fix the term of office of the commissioners.   It was
provided by this act that the question of adopting the
system might be submitted to the electors when a two-
thirds vote of all of the members of the board of supervis-
ors elect should deem it proper to do so.   In 1899, section
49, art. 4, of the Constitution, was further amended,
reading, now:

  "SEC. 49.   The legislature may provide for the laying
out, construction, improvement and maintenance of high-
ways, bridges and culverts by counties and townships,
and may authorize counties to take charge and control of
any highways within their limits for such purposes; and
may modify, change or abolish the powers and duties of
township commissioners and overseers of highways.   But
the tax raised in any one year shall not exceed two dollars
upon each thousand dollars valuation, according to the
assessment roll of the county for the preceding year.   The
legislature may also prescribe the powers and duties of

boards of supervisors in relation to highways, bridges and culverts, and may provide for one or more county road commissioners, to be elected by the people, or appointed, with such powers and duties as may be prescribed by law.

"No county shall incur any indebtedness for any purposes in excess of three per cent. of the valuation, according to the last assessment roll, and no such indebtedness beyond one-half of one per cent. of such valuation shall be incurred, unless authorized by a majority of the electors of said county voting thereon: *Provided*, That any county road system provided by law shall not go into operation in any county until the electors of said county, by a majority vote, have declared in favor of adopting the county road system."

In 1905, section 9 of article 14 of the Constitution was also amended; that portion of it of importance here reading as follows:

"SEC. 9. The State shall not be a party to, nor interested in, any work of internal improvement, nor engaged in carrying on any such work except in the improvement of or aiding in the improvement of the public wagon roads and in the expenditure of grants to the State of land or other property."

The legislature at the session of 1905 passed Act No. 146 (Pub. Acts 1905), entitled:

"An act to create and establish a State highway department by the appointment of a State highway commissioner and assistants, and defining the powers and duties of the office, and to provide for a system of State co-operation with townships and counties in the improvement of the public wagon roads, and to make an appropriation therefor for the fiscal years ending June thirty, nineteen hundred six, and June thirty, nineteen hundred seven, and to provide a tax to meet the same."

The act provides for State aid in building roads of certain standards of excellence, to be paid upon the certificate of the State highway commissioner upon a warrant drawn by the auditor general upon the State treasurer. By the legislation first referred to, as it now stands, it is provided,

in section 1 (amended in 1905) that the supervisors shall, on petition of not less than 10 freeholders residing in each of the several townships in any county, submit the question of adopting the system to a vote of the electors, and in section 6 thereof (as amended in 1905) that:

" In any county where the county road system shall be adopted, a board of county road commissioners, not exceeding five in number, shall be elected by the people of such county: *Provided, however,* If the county road system shall be adopted in Wayne county, there shall be three road commissioners, and they shall be appointed, and in the following manner: (*a*) The county clerk shall appoint one county road commissioner from that portion of the county lying west of the township line road running north and south through the village of Inkster, who shall serve two years from the first day of May in the year in which he receives his appointment. At the expiration of his term, the county clerk shall appoint his successor for the full term of six years, and another every six years thereafter from the same section of the county. (*b*) The county clerk shall appoint another county road commissioner from that portion of the county lying east of the aforesaid township line road, who shall serve four years from the first day of May in the year in which he receives his appointment. At the expiration of his term, the county clerk shall appoint his successor for the full term of six years, and another every six years thereafter from the same section of the county. (*c*) The mayor of the city of Detroit shall appoint one county road commissioner from that portion of Wayne county known as Detroit, who shall serve six years from the first day of May in the year in which he receives his appointment, and it shall be the duty of the mayor of the city of Detroit to make an appointment of a county road commissioner every six years thereafter from the city of Detroit."

Section 8 (as amended in 1905) provides that vacancies in office shall be filled by the board of supervisors, who—

"Shall fix the compensation of such commissioners, except in the county of Wayne, where the compensation shall be five dollars per diem, for such time as the commissioners shall serve the county in the capacity as county road commissioners, and all vacancies shall be filled by

appointment for remainder of term by the same official who appointed the commissioner who has vacated the office, and from that same division of the county must the appointment be made."

There are various sections in which the powers of the board are enumerated, among which, and indicative of the considerable powers given, are:                    .

"SEC. 11. Said board of county road commissioners may lay out such new roads within the county as they deem necessary. Such roads shall be not less than two rods wide. Said board may also change the width or the location or straighten the line of any road over which they take jurisdiction.    *    *    *

"SEC. 19. Said board of county road commissioners shall have authority to grade, drain, construct, gravel or macadamize any road under their control, or to place thereon any other form of improvement which in their judgment may be best, and may extend and enlarge such improvements; they shall have authority to construct bridges and culverts on the line of such road, and to repair and maintain the said roads, bridges and culverts; they shall have all the authority in respect to such roads which is vested in highway officers in townships, relative to encroachments and obstructions thereon.    *    *    *

"SEC. 20. On or before the first day of October of each year, said board of county road commissioners shall determine the amount of tax to be raised for such year in said county for the purposes aforesaid, and shall cause such determination to be entered upon their records. Such tax shall not exceed two dollars on each one thousand dollars of the assessed valuation upon the assessment rolls of the county for the preceding year, nor shall it exceed one dollar on each one thousand dollars of such valuation, without authority therefor being first given by the board of supervisors of the county, except in Wayne county, which shall not exceed fifty cents on each one thousand dollars of the assessed valuation upon the assessment rolls of the county for the preceding year. At the annual meeting of the board of supervisors held in October, the county clerk shall lay said determination before the board of supervisors, and such board of supervisors shall thereupon apportion such tax between the several townships and cities of said county according to their

equalized valuation, and the supervisors or other assessing officers in such townships and cities shall levy and appor- tion the taxes so apportioned to their respective townships and cities, upon the tax rolls of such townships and cities respectively, upon which the county taxes are assessed. The taxes so assessed shall be carried out upon the tax rolls in a separate column to be headed 'county road tax,' and shall be collected and paid to the county treasurer, the same as other county taxes. All the provisions of law relating to the assessment, levy, collection and return of county taxes and the sale of property delinquent there- for, shall apply to taxes to be raised pursuant to this act. The county treasurer shall keep a separate account of the taxes collected and moneys received under this act, and shall pay the same out only upon the order of such board of county road commissioners and upon warrants signed by the chairman and countersigned by the clerk of the board. All moneys raised under the provisions of this act shall be expended by such board of county road commis- sioners exclusively for the purposes herein mentioned."

At a special election, held in September, 1906, the elect- ors of Wayne county adopted the county road system, and thereafter, in accordance with the provisions of section 6 of said act, three county road commissioners were ap- pointed, two by the county clerk, and one by the mayor of the city of Detroit, and these gentlemen qualified and entered upon the performance of their official duties. At a meeting held October 6, 1906, at which two of them were present it was resolved that the amount of tax to be raised for the current year in the county of Wayne for the purposes stated in Act No. 149 of the Public Acts of 1893 should be 50 cents on each $1,000 of the assessed val- uation according to the assessment rolls of the county for the preceding year. This action of the board was certified to the board of supervisors of the county of Wayne. Later, on October 24th, at another meeting of said board, at which the same two commissioners were present, the following action, as shown by the record of the board, was had :

" It was regularly moved and supported that in view of the sentiment of the members of the board of supervis-

ors, that we amend the proposition of raising one-half mill tax and substitute therefor one-fourth mill tax, and advise the board of supervisors of action taken."

On the same day, the committee on roads and bridges of the board of supervisors of Wayne county reported, and the report was adopted, as follows:

"Your committee on roads and bridges, to whom was referred the communication of the Wayne county road commissioners printed on page 136 of the proceedings, respectfully report that we have had the matter under consideration, and recommend that a tax of one-quarter ($\frac{1}{4}$) of a mill be spread upon the tax rolls of the cities of Detroit and Wyandotte and the several townships of the county of Wayne."

Pursuant to the action described, the said levy was apportioned and spread upon the tax rolls in Wayne county; the total of said tax being $87,125.72. Of this, a large amount has been collected. It was carried out upon the tax rolls in a separate column, headed "County Road Tax." On December 22, 1906, the board of county road commissioners of the county of Wayne determined to purchase certain tools and appliances for cash, to be paid for on delivery, and the board ordered that the amount of money required should be drawn for that purpose from the county treasurer, and a warrant for the sum of $25, signed by the chairman of said board and by the clerk, dated December 22, 1906, was drawn on the county treasurer of the county of Wayne. The chairman of the board presented it to the board of county auditors of Wayne county for audit and allowance, and, later, to the county treasurer for payment. The board of auditors refused to allow or pass upon the account, and the county treasurer refused to honor the warrant, stating that he would not honor any warrant drawn by said board of county road commissioners. Proceedings had been begun in the circuit court for the county of Wayne in the name of the prosecuting attorney of the county to try the title of the persons holding the offices of county road commissioners,

which proceedings were then, and are still, pending in said court. The commissioners, having failed to obtain money upon their warrant, filed in the circuit court for the county of Wayne their petition praying that a writ of mandamus issue to the county auditors of the county of Wayne, commanding them to consider, audit, and approve the account which had been presented to said auditors with said warrant, and to approve and allow the accounts and bills of the board of county road commissioners, and commanding the county treasurer of the county to pay out of the county road tax, so called, such moneys as shall be ordered by the said board of county road commissioners upon warrants signed by the chairman and countersigned by the clerk of the board. An order to show cause having been issued, the respondents filed their joint answer. The matter coming on to be heard in the circuit court for the county of Wayne, said court, by three of the judges thereof, denied the writ. The proceedings so had and the determination so rendered in the circuit court for the county of Wayne have been brought into this court by writ of certiorari for review.

It is stated in the briefs that the county road system has been adopted, and is in operation, in 20 counties. It is contended that the entire act is unconstitutional and void; that, if not wholly void, it has and can have no operation in the county of Wayne. The specific objections may be rather broadly stated, as follows: Section 1 of the act, read, in connection with section 25, Act No. 96, Pub. Acts 1895, is unconstitutional. In Wayne county, the cities of Detroit and Wyandotte pay five-sixths of the tax under the law, none of the money raised can be expended within their limits, and the inhabitants of those cities have no voice in the action required to adopt or to rescind, and are therefore denied the equal protection of the laws. Sections 6 and 8 of the act are unconstitutional because of the method of appointment established. The appointments made are not provisional. The relators are not de facto officers. The unconstitutional provisions of the act

may not be eliminated and leave the act valid for any purpose.

For relators, it is argued that, if the provisions of the law giving to relators the power to audit their own accounts and the power to determine the amount of the county road tax, and providing for their appointment by the mayor and the county clerk, are unconstitutional (which is not admitted), it is unnecessary, for the purpose of sustaining the law and the validity of the tax which has been levied in Wayne county, to hold those portions of the act to be constitutional, for the reason that they may be entirely eliminated from the act, and, if eliminated, the act will remain a constitutional, workable provision. If the appointments are invalid as permanent appointments, and are not provisional appointments, and if, consequently, there are no road commissioners for Wayne county, still the tax was properly levied and is valid. It is admitted that taxation is a legislative function, and that the legislature cannot give to the board of county road commissioners, an appointive body, the power to levy a tax; that such part as this board took in determining the amount of the tax should be treated as a nullity, at most as a mere recommendation to the board of supervisors.

In the brief filed by the attorney general, it is contended that the appointment of the Wayne county road commissioners by the county clerk and mayor of Detroit does not invalidate the tax levy for county road purposes, because (a) the legislature had power to authorize the appointments to be so made; (b) if not, it is because the appointments should have been left to the board of supervisors, and, that board having recognized these appointments, the present commissioners are lawfully in office; (c) if not, they are, nevertheless, de facto officers, and any official action on their part is valid. Under the constitutional amendment of 1893, the county road commissioners were to be elected by the people, and, if so elected, no constitutional objection exists to conferring upon such a board legislative powers. The constitutional amendment of 1899

did not operate to repeal this statute so far as it applied to Wayne county, but only so much of it as was inconsistent with the new constitutional provision, and that the court may still give an effect to this statute consistent with the present Constitution.   The provisions which authorize the board of county road commissioners to draw warrants directly on the county treasurer, without any allowance or approval by the board of county auditors in Wayne county, and in other counties without an allowance or approval by the board of supervisors, whether good or bad as a constitutional provision, cannot affect the validity of the tax levied under the act.

*John E. Bird*, Attorney General, and *Charles T. Wilkins*, for relators.

*Fred A. Baker*, amicus curiæ.

*Allan H. Frazer* and *Ormond F. Hunt*, for respondents.

OSTRANDER, J. (*after stating the facts*).   The case has been so fully stated in order that the scope of the attack which is made upon the act may be seen, and the points which we do not consider, as well as those which we consider, may be understood.   We cannot avoid a consideration of the validity of the act to the point where we conclude that reason is shown for granting or for denying the relief which is asked for.   Beyond that point, we are not required to go.

It will be noticed that the constitutional amendment of 1893, like the one of 1899, while in some respects limiting the powers of the legislature, is not operative without legislative action.   Unlike the last, the first amendment directs that county roads shall be under the control of a board of commissioners not exceeding five in number, who shall be elected by the people.   The legislation which followed the first amendment was in conformity therewith.   The system evolved by the legislature was a uni-

form one, with certain unimportant exceptions applicable to Wayne county only. With the adoption of the constitutional amendment of 1899, the act underwent considerable changes; the most of them, of importance, affecting Wayne county only. The legislature did not provide for "one or more county road commissioners, to be elected by the people, or appointed," but provided that in all counties excepting Wayne they should be elected by the people, and later, and in 1905, that in Marquette county they should be appointed by the board of supervisors. The powers confided by the legislature to county commissioners, in a system which required such officers to be, in all counties, elected by the people, were not modified after the adoption of the last amendment to the Constitution, and are substantially the same in counties where the commissioners are elected, and in Wayne county where they are appointed. Among the powers confided to them is the extraordinary one of taxation.

An office is created before it is occupied, or executed, and an appointment to a particular office is an appointment to exercise the powers of the office. The name given to these officers, the powers conferred, and the obvious purpose of the law support the conclusion that they are local public officers, to whom is delegated a portion of the sovereign power of the State. The statute empowers them to execute duties heretofore devolved upon highway commissioners. See *Campau* v. *Highway Commissioner of Grosse Pointe*, 132 Mich. 365, 369. The property of the county is taxed for county roads, the statute imposes upon counties the duty to maintain such roads, and imposes a liability for injuries received on account of their being out of repair. In the sense that township and city highways are matters of local concern, so county roads are of local concern; and this conclusion cannot be affected by the fact that aid in building roads may be obtained from the State, or the fact that counties have heretofore exercised few powers of a purely local nature. The language of the constitutional provision is:

"The legislature may also prescribe the powers and duties of boards of supervisors in relation to highways, bridges and culverts, and may provide for one or more county road commissioners to be elected by the people, or appointed, with such powers and duties as may be prescribed by law."

The words "the people" can refer to none other than those of the county. If it was determined by the legislature that these officers should be appointed instead of being elected "by the people," provisions for such appointment were required to be in conformity with the theory of local self-government. This conclusion may be rested as well upon mere construction of the language employed in the Constitution, as upon the idea that the source of the appointment must conform with the extent of the powers given. The power of appointment to public office belongs primarily to the people. The constitutional provision confers upon the legislature the power to determine whether the office shall be filled by election or by appointment, and, if by appointment, to prescribe the manner of appointment. The legislature did not appoint. It provided by whom appointments, and successive appointments, should be made. Relators were named according to the manner provided. In no sense, therefore, is it true that their appointments were provisional; and no person, officer, or body representative of the county made, or is charged with the duty of making, the appointments. Courts may not supply a method of appointment, since that would involve the exercise of legislative power. For the same reason, we are required to deny the soundness of the argument that because the board of supervisors of Wayne county have recognized the relators as officers, it would be held, in quo warranto proceedings, and upon the authority of *People, ex rel. Attorney General,* v. *Lothrop,* 24 Mich. 235, they are entitled to their offices. We conclude that the act, in so far as it provides for the appointment of county road commissioners for Wayne county, cannot be sustained:

The tax which makes the fund upon which the relators' warrant is drawn was not laid by the board of supervisors, and was laid by the board of county road commissioners. We agree with the court below that the only rational conclusion to be drawn from the record upon this point is that the supervisors understood they had no power in the premises, and, in fact, exercised none. The power of the board of supervisors to lay a tax for such a purpose is found in section 9 of article 10 of the Constitution, and the limitation there found is not removed by the provisions of section 49 of article 4 without legislative action. The legislature has acted. The action taken does not give to the supervisors of Wayne county the power to levy a tax for county roads. Rather, as will be seen by reading section 20 of the act, the supervisors are denied any authority in the matter. It is clear, then, that the powers of supervisors to raise money for roads have not been expressly increased by the legislature, and that they are no greater than they would be if there was no legislation upon the subject, unless we are able to say that, because counties, including Wayne county, have been authorized to take charge of and control highways within their limits, this necessarily carries with it the power to raise money to an amount not exceeding the limitation expressed in section 49, art. 4. It is a part of the argument advanced that, although the legislature has not expressly modified the powers of county road commissioners since the amendment of 1899, that amendment itself operates as a modification of such powers, and has the effect to divest these officers of legislative, and to leave them clothed with executive, powers; that we should construe the act as if the road commissioners in Wayne county had been given no legislative powers. Undoubtedly, courts do, and should, if it is possible, sustain a statute by eliminating objectionable provisions, leaving those which are not objectionable to stand. The rule is:

"If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of

being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained.   The difficulty is in determining whether the good and bad parts of the statute are capable of being separated within the meaning of this rule.   If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other.   But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail, unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them." Cooley on Constitutional Limitations (7th Ed.), pp. 247, 248.

There are many reasons why we may not so construe this statute.   The method of appointing commissioners for Wayne county was fixed after the constitutional amendment of 1899 was in effect, the powers given to them are the same as those possessed by such commissioners in other counties, the legislative scheme for county control of roads is distinctly invaded if commissioners do not possess and exercise the statute powers, and, last, but not least, of reasons, the electors of Wayne county adopted the system as it was presented.   Nor can we admit the soundness of the argument made, except by determining in effect that, without further legislation, the scheme may be carried into effect in Wayne county by merely advisory or executive action on the part of the road commissioners, leaving all necessary legislative action to the board of supervisors.   We cannot so determine because boards of supervisors possess, generally, only such powers as are expressly given to them, the legislature has not given to the supervisors of Wayne county the powers necessary to carry the act into effect in that county, and the Constitution cannot be held to be, in this regard, self-executing

in Wayne county, and not self-executing in all other counties. The tax must stand or fall as one laid by the commissioners. Whether their acts, under color of office, in so far as they involve public and private interests, may be sustained, is a subject upon which we express no opinion. In doing this, we necessarily decline to consider the contention that the entire act is void. We have reached the conclusion that relators are not officers de jure. We infer that further legislation is to be sought.

We do not understand that any contract made by relators is involved in this proceeding, or will be affected by our decision. Nor is this a direct proceeding to test the right of relators to office, or to determine the validity of a tax.

We affirm the judgment of the court below, because we are of opinion that relators should be denied the right to disburse the fund which has been created. It is, at least, a serious question whether many of the powers confided by the act to the commissioners, other than the one to tax, are not legislative in character. In asking relief, relators are asserting the legal right to the office and to the money—the right to continue to exercise the powers of the office. Proceedings are pending to try their right to the office. There has been, so far, little action by the public or by public officers which can be said to amount to acquiescence in their claims, and great confusion is likely to result if it is held that warrants drawn by them must be paid. That the courts may, under the circumstances disclosed, exercise their discretion in determining whether the writ of mandamus shall issue, is not to be doubted. *Lawrence* v. *Hanley*, 84 Mich. 399; *Board of Sup'rs of Cheboygan Co.* v. *Township of Mentor*, 94 Mich. 386. And see *Board of Park Com'rs of Detroit* v. *Common Council of Detroit*, 28 Mich. 228.

MCALVAY, C. J., and GRANT, HOOKER, and MOORE, JJ., concurred.