BOARD OF STATE TAX COMMISSIONERS *v.* BOARD OF ASSESSORS OF GRAND RAPIDS.

1. TAXATION—REVISION OF ASSESSMENTS—STATE BOARD—LOCAL SELF-GOVERNMENT—CONSTITUTIONAL LAW.
    Act No. 154, Pub. Acts 1899, creating a board of State tax commissioners, and empowering it to revise the assessments of property in the townships and cities of the State, is not unconstitutional as an invasion of the right of local self-government.

2. SAME—SUPERVISORS—CONSTITUTIONAL FUNCTIONS.
    The fact that, at the time of the adoption of the Constitution of 1850, assessments were made by township supervisors, and that article 11, § 1, of the Constitution, provides for the

| | |
|---|---|
| 124 | 491 |
| 124 | 684 |
| 124 | 685 |
| 124 | 491 |
| f125 | 132 |
| 124 | 491 |
| s83NW | 209 |
| 124 | 491 |
| f136 | ¹106 |
| 124 | 491 |
| 139 | ⁵504 |
| 124 | 491 |
| j151 | ¹305 |

annual election in organized townships of one supervisor, etc., whose powers and duties shall be prescribed by law, does not justify the inference that the framers of the Constitution intended to invest such supervisor with the exclusive power of making assessments.

3. SAME—BOARD OF EQUALIZATION.

Act No. 154, Pub. Acts 1899, creating a board of State tax commissioners, and giving them supervisory authority in the matter of the assessment of property, is not open to the objection that it deprives the State board of equalization of constitutional powers.

4. SAME — TITLE OF STATUTE — GERMANE PROVISIONS — BOARDS — ACTS OF INDIVIDUAL MEMBERS.

The title of Act No. 154, Pub. Acts 1899, being an act "for the creation of a board of State tax commissioners, charged with the duty of enforcing this act, and exercising supervisory control over officers administering the general tax laws of the State," etc., is sufficient to warrant the inclusion of provisions authorizing a single member of the board to act in reviewing assessments and in making additions to the rolls. GRANT, J., dissenting.

5. SAME—CITIES AND VILLAGES—CHARTER PROVISIONS.

Act No. 154, Pub. Acts 1899, which amends the general tax law (Act No. 206, Pub. Acts 1893) by creating a board of State tax commissioners, with supervisory authority in the matter of the assessment of property, is applicable to the city of Grand Rapids; the provisions of the Grand Rapids charter being reviewed, and *held* not to be such as to take the city out of section 107 of the general law, which declares it to be applicable to all cities and villages except where inconsistent with their respective charters.

6. SAME—APPORTIONMENT—ADDING NAMES TO ROLL.

Where an apportionment of taxes among the wards of a city has been made under the provisions of its charter, that apportionment cannot thereafter be disturbed by the board of State tax commissioners, but they still have power to add to the rolls assessments against persons or property omitted therefrom.

*Mandamus* by the board of State tax commissioners to compel the board of assessors of the city of Grand Rapids to deliver the assessment rolls of said city to relator for review. Submitted June 12, 1900. Writ granted June 19, 1900.

*Horace M. Oren*, Attorney General (*Russell C. Ostrander*, of counsel), for relator.

*Lant K. Salsbury*, City Attorney (*Willard Kingsley, Edgar A. Maher*, and *Knappen & Kleinhans*, of counsel), for respondent.

*H. M. Campbell, amicus curiæ.*

Montgomery, C. J. This is an application for a *mandamus* to require the respondent board to deliver the assessment rolls to relator, to enable the board to add to the rolls assessments which have been omitted therefrom, and to amend certain assessments made by the local assessors, pursuant to the provisions of Act No. 154, Pub. Acts 1899. The answer of respondent states three grounds for its refusal to comply with the request made by relator that the books be delivered to it for the purpose stated:

1. That the act is unconstitutional.
2. That the act, if valid, does not apply to Grand Rapids.
3. That the relator was too late in attempting to make an alteration of the rolls.

It is insisted that the act is unconstitutional, for the reason that it interferes with local self-government in cities and townships. The particular provisions which are said to invade the right of local self-government are those empowering the State board to revise the assessment of property of an individual in any township or city in the State. It is conceded that, under the Constitution of 1835, the State legislature possessed all the legislative powers of the British parliament, and was not limited, either expressly or impliedly, in any such degree as is the legislature under the Constitution of 1850. We think it must be conceded that, in the absence of constitutional limitation, the State may, by its legislature, prescribe the limits of taxation and agencies to be employed. The rule is stated in 2 Dill. Mun. Corp. (4th Ed.) § 737, note 2:

"Subject to constitutional restrictions, it is within the power of the legislature of a State to ascertain the public

burdens to be borne, and the persons or classes of persons who ought to bear them; and its determination, within the limits of the constitution, is not judicially reviewable."

The question recurs, Is there an express or plainly-implied inhibition against the employment of a State agency to supervise assessment rolls? It is manifest that the question is quite different from the one presented when an attempt may be made by the State to impose upon a municipality a *burden*, or to compel such local body to enter into a contract. No burden is imposed upon the local municipalities by this legislation. No right of local self-government is infringed, unless it be a right to determine, *in practice*, what property may be assessed on a particular roll. It is clear that the municipality has no right to determine this question *in theory;* for the State may, within constitutional limits, prescribe what persons and property may be assessable. It gets down, then, to the question whether the exclusive agency for making such assessments is, under our Constitution, some officer of the municipality, whose acts are final and conclusive as well to the State as to the municipality; for it is to be kept in view that, both at the time of the adoption of the Constitution and at the present, the taxes levied for State purposes are based on the same assessment as are those collected for local use. It is urged that as supervisors of townships were, under the law in force at the time of the adoption of the Constitution, authorized to make assessments, and as supervisors were provided for by the Constitution, it must be considered that the intention was to vest in such officers the functions which they were then exercising, and this to the exclusion of a State board. Much of the force of this contention is taken away by the fact that under the tax law in force in 1850 the supervisor was not made the sole assessor, but the electors might elect two assessors, who had co-ordinate power. Section 8, chap. 16, tit. 4, Rev. Stat. 1846. Section 1, art. 11, of the Constitution, provides that:

"There shall be elected annually, on the first Monday of April, in each organized township, one supervisor, one township clerk, * * * one commissioner of highways, one township treasurer, one school inspector, not exceeding four constables, and one overseer of highways for each highway district, whose powers and duties shall be prescribed by law."

It is contended that, inasmuch as the duty of making assessments was at this time reposed in the supervisor, this function cannot now be withholden from him and reposed in the State board. It may be said that the act does not withdraw wholly from the supervisor this duty; it only provides for supervision of his work and correction of errors; and, as already pointed out, the supervisor was not the only person who, under the law as it existed at the time, was authorized to make assessments in townships. Reliance is placed on the two cases of *Hubbard* v. *Township Board of Springwells*, 25 Mich. 153, and *Davies* v. *Board of Supr's of Saginaw Co.*, 89 Mich. 295 (50 N. W. 862). In the latter case very broad language is used in speaking of the sacredness of the functions exercised by officers when the Constitution was adopted. This language must be understood as applying to the case in hand, which was one in which an attempt had been made to withdraw from the control of the highway commissioner and overseer of highways *all* control of certain highways in their respective jurisdictions. This was not a modification of their functions; it was an abrogation of them; and not only this, but there was an attempt to impose a burden upon the locality,—an interference with local self-government. That it was not intended by the decision in the *Davies Case* to hold that the legislature can in no case modify the functions of township officers as they existed when the Constitution was adopted is evidenced by the fact that *Hubbard* v. *Township Board of Springwells*, 25 Mich. 153, was quoted with approval, in which case it was said:

"The Constitution requires an election every year of a township commissioner of highways and of an overseer of

highways for every highway district. Their powers were *subject to legislative modification,* but no legislation could abolish the offices or take away all their functions."

The real gist of these two decisions is that the provision for the election of these officers indicates that the control of highways was, by clear implication, treated as a matter of local concern, and by as clear implication vested in the officers named. The very title of the offices indicated this. Can it be said that by providing for the election of a supervisor, "whose duties shall be prescribed by law," there is evidence of a purpose of treating assessments upon which both local and State taxes are to be assessed as a matter of purely local concern, and that the duties of the supervisor to make such assessment are so far implied by this provision as to be beyond legislative control? There is nothing in the title of the office, as used in the Constitution, to indicate that he is to be given any authority to make assessments; and not only might this right in large part be taken from him by the electors, but he had many additional functions. He was an inspector of elections; he presided at meetings of the township board; he classified justices of the peace; he was a member of the board of supervisors; it was his duty to prosecute for penalties and to suppress riots. In the exercise of some of these duties he was doubtless distinctively a representative of his township, and there may be duties of that character which cannot constitutionally be withdrawn from him; but we do not deem the making of an assessment roll one of them. It was not distinctively a matter of local concern. The State is concerned in the proper assessment of property, not only as to its own interests as they are affected by the collection or failure to collect the funds necessary to carry on government, but, as the supreme authority in the State, the legislature is required by section 12, art. 14, of the Constitution, to see to it that assessments be made on property at its real value. We think that the authority of the legislature is not so restricted as to preclude the use of a State board

in carrying into effect this important constitutional provision. As was said in *People, ex rel. Drake*, v. *Mahaney*, 13 Mich. 481:

"There is nothing in the maxim that taxation and representation go together which requires that the body paying the tax shall alone be consulted in its assessment, and, if there were, we should find it violated at every turn in our system."

See, also, *Youngblood* v. *Sexton*, 32 Mich. 406 (20 Am. Rep. 654).

It is suggested that inasmuch as section 13, art. 14, provides for a State board of equalization, this excludes the right to authorize such a board as the board of State tax commissioners. This is based upon the claim that the board of equalization is in one sense an assessing board; but an examination of this act discloses that none of the duties of the State board of equalization are interfered with in any way.

Another objection to the act is based on its title. The act is an amendment to the general tax law, and is entitled "An act to amend" certain named sections of that law, and to add thereto certain sections providing for "a board of State tax commissioners, charged with the duty of enforcing this act, and exercising supervisory control over officers administering the general tax laws of this State, and reporting to the legislature thereon, and empowered in certain cases to review assessment rolls, and correct the same or add thereto, and to provide for the assessment and taxation of property omitted from the assessment rolls." There are various provisions of the amendatory act authorizing a single member of the board to act in reviewing assessments, and to make additions to the rolls. It is urged that the portion of the title to the act which provides "for the creation of a board of State tax commissioners, charged with the duty of enforcing this act, and exercising supervisory control over officers administering the general tax laws of this State," indicates that a State board shall be created, and that the board, *as such*, shall

124 MICH.—32.

be charged with the duty mentioned in the title, and that the act is therefore wholly invalid, for the reason that the object is not expressed in the title.    We think this objection without force.    Had the words of the title quoted been wholly omitted, the title would have been sufficient. On the other hand, had the words quoted constituted the whole of the title, a distribution of certain of the powers of the board among its members would not have been so foreign to the subject mentioned in its title as to render the act invalid for this reason.

It is contended that the act does not apply to the city of Grand Rapids.    Section 107 of the original act (Act No. 206, Pub. Acts 1893) provides that the act shall be applicable to all cities and villages where not inconsistent with their respective charters.    The provisions of the amendatory act are therefore applicable to cities, except so far as it may be inconsistent with charter provisions. It is contended that the provisions of the charter are so inconsistent with the provisions of the amendatory act conferring upon the State board the power of revision of the tax rolls that the latter act should not be held to apply to that city.    Under the city charter, the assessments are made by a board of assessors.    The common council is made a board of review.    The rolls are required to be returned to the council on or before the fourth Monday in April.    The council is given 15 days to consider appeals. The council is required to consider the city budget on or before the second Monday in May.    The city clerk is required to certify this budget to the city comptroller within 5 days, and it is made his duty to apportion the amount to be raised among the several wards of the city according to the property valuations of the assessment rolls as confirmed by the common council, and certify the apportionment to the city assessors within 5 days thereafter.    It is made the duty of the assessors to make copies of the assessment rolls and to spread the taxes.    This work is to be completed on or before the 28th day of June in each year.    The rolls are then delivered to the comptroller,

who affixes his warrant and delivers the rolls to the city treasurer on or before the 1st day of July. It is also made the duty of the city assessors to make copies of the assessment rolls, and deliver them to the city treasurer within the time prescribed by the general laws of the State for the completion of the December tax roll. We think the provisions of the amendatory act are not so far inconsistent with the city charter as to render them wholly inapplicable. It is true that there comes a time when the apportionment of taxes among the wards of the city cannot be affected by a change in the assessment, and there may be a slight inequality, as between residents of different wards in the city, resulting therefrom; but the rolls may be still corrected as to individual taxpayers, and no injustice be done to them thereby. The equalization between counties presents similar difficulties. In this case the apportionment has in fact been made. It is insisted that the proposed action of the relator is therefore tardy; but, while we are of the opinion that the apportionment among the wards may not be disturbed, we think the State board still has power to add to the rolls assessments against persons omitted therefrom, or property omitted.

For cases upholding similar legislation, attacked on different grounds, see *State* v. *Weyerhauser*, 68 Minn. 353 (71 N. W. 265), 72 Minn. 519 (75 N. W. 718), 176 U. S. 550 (20 Sup. Ct. 485).

The writ must issue as prayed.

Hooker, Moore, and Long, JJ., concurred with Montgomery, C. J.

Grant, J. I concur in the opinion of the Chief Justice, except in one point. Under the title to the act, I do not think it competent to confer upon one member of the board the powers which the title to the act clearly indicates are to be conferred upon the board itself. A board cannot be composed of one individual; neither can it meet in three places at the same time. The title to the act provides alone for a board. It does not even hint that one

member of it is to be clothed with the extraordinary power to superintend the assessment rolls, to set them aside and make new ones, and that his action is to be final.   A quorum of any board is necessary to enable it to do business and to act.   Under section 152 each member of the board in fact constitutes the board, and so it may be in session in three different places at the same time.   That each member of the board may make an independent investigation may be safely granted.   He may gather information upon which the board may act.   So the secretary, under the order of the board, may probably collect information for the benefit of the board.   The secretary is required to keep a record of the proceedings of the board. How can he keep the proceedings of the board when it is split up into three, each member acting for himself?   The act is a long one, and there is nothing in the title, in my judgment, to indicate that such an extraordinary power was to be vested in each member of the board. ` Nor is it necessary in order to carry out the purpose of the act. The duties of the board are clearly defined, and the duties imposed upon it can be clearly performed with the power intended to be conferred upon each member eliminated. I think it can safely be said, therefore, that the act may stand notwithstanding the elimination of the power conferred upon the members individually.   I cannot yield my assent to the holding that, under a title to create a board, each individual thereof can be clothed with the power to perform all its functions without consultation with, approval, and action of the members as a board.

I regret that there has not been more time to examine the important questions involved, and that the necessity of a speedy determination is considered of such importance as to require haste in reaching a conclusion.