# JANUARY TERM, 1914.

ATTORNEY GENERAL, *ex rel.* BARNES, *v.* BOARD OF SUPERVISORS OF MIDLAND COUNTY.

1. TAXATION—INCREASE OF VALUATION—REVIEW BY STATE BOARD—VALUATION.

The board of State tax commissioners, proceeding under Act No. 201, Pub. Acts 1913, to equalize the valuations of a county, may review the action of the board of supervisors and increase the valuations as fixed without ordering said board to reconvene, although the commissioners are empowered to require the supervisors to so reconvene. Jurisdiction to proceed does not depend on the reconvening of the supervisors.

2. MANDAMUS—RELATOR'S SIGNATURE—PETITION.

In mandamus to compel a board of supervisors to comply with an order of the board of State tax commissioners, a petition signed and verified by two supervisors of appealing townships, but not verified or signed by any of the State tax commissioners who appeared as parties to the proceeding, is sufficient; the board of State tax commissioners being thereby, in effect, omitted as relators.

3. CONSTITUTIONAL LAW — EQUALIZATION — TAXATION — BOARD OF SUPERVISORS—LOCAL LEGISLATION—APPEALS.

The equalization of assessments between assessing districts of counties is not a matter of purely local concern so as to deprive the legislature of the right to interfere by enacting a statute providing for review by the State tax commission of the assessments as levied by the various boards of supervisors. Act No. 201, Pub. Acts 1913. *Zimmer* v. *Bay County Supervisors*, 159 Mich. 213 (123 N. W. 899), overruled in part.

4. SAME—UNIFORMITY—EQUALIZATION—VALUES.

Under the sections of the Constitution providing for uni-

178 MICH.—33.

(513)

formity of taxation and conferring power on the legislature to levy a State tax, etc., on cash valuation of property (Art. 10, §§ 2, 3, 7), the State may authorize the review of valuations and assessments by the board of State tax commissioners.

5. SAME.

Nor is Act No. 201, Pub. Acts 1913, unconstitutional because it provides (section 34) that the aggregate valuation of the county shall not be increased under proceedings for appeal as authorized by said statute.

McALVAY, C. J., and BROOKE, J., dissenting.

Mandamus by Orlando F. Barnes and other members of the board of State tax commissioners, and John Thompson and Henry Belitz to require the board of supervisors of Midland county to comply with an order of said commission. Submitted December 20, 1913. (Calendar No. 25,968.) Writ granted January 13, 1914.

*Grant Fellows*, Attorney General, and *David H. Crowley*, Assistant Attorney General *(Gilbert A. Currie*, of counsel), for relators.

*Ray Hart*, Prosecuting Attorney *(Floyd L. Post* and *Gillett & Clark*, of counsel), for respondent.

KUHN, J. This is an application for mandamus to compel the respondent board of supervisors to reconvene and reapportion the State and county taxes in accordance with the report and order of the relator board of State tax commissioners. The board of supervisors of Midland county, upon the 25th day of October, 1913, took action equalizing the properties of the various assessing districts in said county. The relators John Thompson and Henry Belitz, who are supervisors of two of the townships in said county, objected to this equalization and appealed to the board of State tax commissioners, as provided for by Act No. 201 of the Public Acts of 1913, complaining of unfairness and discrimination in said equalization,

and petitioned the said board to review the action of the board of supervisors in this respect. The board of State tax commissioners, in accordance with the provisions of said act, gave notice to the respondent of its decision to investigate the complaint, and upon testimony introduced upon a hearing had, and from other data previously gathered by the said relator board, determined that the equalization made on October 25, 1913, by the respondent board was unfair and discriminatory, and thereupon made another equalization of the various assessing districts of said county, and ordered the respondent board to reapportion the State and county taxes upon the basis so determined by the relator board. The respondent board met on November 18, 1913, in the regular manner, upon notice from the clerk, but refused to comply with the orders of the relator board and, in a resolution at that time adopted, gave as its reason for its refusal to act the following:

"Whereas, in the opinion of counsel of the board, Act 201 of the Public Acts of Michigan for 1913 and said order and determination of the said board of State tax commissioners is illegal and unconstitutional and void for the reason that the same violates the principles of local government and also that said order and determination was made without any evidence whatever, and that several of the townships of the said county was raised on knowledge of said board of State tax commissioners, without any evidence whatever as to the value of those townships, or as to their assessments or equalization: Therefore, be it resolved, that the board of supervisors hereby consider that the only legal and valid equalization of the property assessed in said county and apportionment of State and county taxes in said county is the equalization and apportionment made by the board on the 25th day of October, 1913. All of which is in accordance with the advice of counsel of the said board."

In this proceeding respondent denies that the peti-

tioners are entitled to the relief prayed for in the petition, for the following reasons:

"(1) Because section 34 of Act No. 201 of the Public Acts of the State of Michigan, for the year 1913, in so far as it purports to confer upon the board of State tax commissioners any authority to review the proceedings of the boards of supervisors of the several counties of the State of Michigan, for the equalization of township valuations within said counties, and in so far as it is sought to be applied to the proceedings hereby affected, is unconstitutional and void.

"(2) That by failing to serve notice of their proceedings upon the said Stewart B. Gordon and Ira Fales, members of the board of supervisors of the said county, and representing the city of Midland on said board, the board of State tax commissioners failed to acquire jurisdiction of the pretended proceedings pending before said board.

"(3) That the relators' petition, although purporting to be the petition, among others, of the board of State tax commissioners, is not signed or verified by any member of the said board, or by any other person acting for or by the authority of the said board, or any member thereof."

The answer to the second reason above advanced is that there is nothing in the act in question which requires the board of State tax commissioners to convene the board of supervisors. The act provides that:

"The said board of State tax commissioners shall have the right to order the said board of supervisors to reconvene and to cause the assessment rolls of said county to be brought before it, and it may summon the several supervisors of said county before it to give evidence in relation to said equalization, and may take such further action and may make such further investigation in the premises as it may deem necessary."

The failure of the State board to reconvene the respondent board as provided for in the act would not invalidate the proceedings had by them.

The effect of the omission of the State board to properly sign and verify the petition would be to strike their names from the proceedings as relators, and would leave John Thompson and Henry Belitz as relators, who have a sufficient interest in the case to bring the proceedings. We do not find that there is any merit in the third reason.

Counsel for respondent say that the instant case "presents almost a precise parallel to the case of *Zimmer* v. *Bay County Sup'rs,* 159 Mich. 213 (123 N. W. 899)," where a similar statute (Act No. 292 of the Public Acts of 1909) was involved. The material change in the present statute from the one considered in the *Zimmer Case* is that the board of State tax commissioners is substituted for the committee on appeals, which was created by the parties in interest from ex-supervisors of adjoining counties. Two opinions were filed in the *Zimmer Case,* both holding the statute unconstitutional. The majority opinion held, in effect, that, as the committee on appeals was a nonresident body of men not representatives of the people of the county, it violated the constitutional principle of local self-government, and, also, the method of its selection created an appeal tribunal, which violated the rule that no man may be a judge, or select the judge, of a case in which he has an interest. The minority opinion was based on the latter ground alone. In the majority opinion the following appears:

"Can it be said of the act under consideration that the State has an interest in the activities of the committee on appeal, or that they are not 'distinctively a matter of local concern?' We think not. The concluding sentence of section 34 of the act is as follows:

" 'Provided, further, That the said committee on appeal, shall not increase the aggregate valuation of said county.'

"It is manifest that the State has no interest in the matter. The county as a whole pays the same tax to

the State, whether it pays according to one equalization or the other. The burden is simply, in part, lifted from one township or ward, and imposed upon another township or ward. The action of the committee produces a purely local result. Its action, however, relieves one portion of the local community from taxation in a measure, and imposes upon another an additional burden. This result is reached through the intervention of a nonresident body of men not representatives of the people of the county in which they act, and is repugnant to the well-settled principles of local self-government, so frequently asserted and upheld by an unbroken line of decisions of this court. *People* v. *Hurlbut*, 24 Mich. 44 (9 Am. Rep. 103); *People* v. *Murray*, 89 Mich. 276 (50 N. W. 995, 14 L. R. A. 809, 28 Am. St. Rep. 294); *Township of Ada* v. *Kent Circuit Judge*, 114 Mich. 77 (72 N. W. 35); *Moreland* v. *Millen*, 126 Mich. 381 (85 N. W. 882); *Board of Road Com'rs of Wayne County* v. *Board of Auditors*, 148 Mich. 255 (111 N. W. 901); *Davidson* v. *Hine*, 151 Mich. 294 (115 N. W. 246, 15 L. R. A. [N. S.] 575, 123 Am. St. Rep. 267 [14 Am. & Eng. Ann. Cas. 352])."

It is urged that this reasoning, when applied to the instant case, is controlling, and, unless it is overruled, it follows that the present act is unconstitutional. We have carefully examined the briefs of the original files in the *Zimmer Case*, and are satisfied that there is no escape from this conclusion. The result reached by the entire court could have been arrived at, however, without holding that the State has no interest in the question of equalization. We fully realize that without the observance of *stare decisis* the law would soon become fluctuating and uncertain, and we hesitate to overrule the reasoning of a decision deliberately made. As this court said in *McEvoy* v. *City of Sault Ste. Marie*, 136 Mich. 172, 178 (98 N. W. 1006):

"Before this court overrules a decision deliberately made, it should be convinced not merely that the case

was wrongly decided, but also that less injury will result from overruling than from following it."

When, however, it becomes apparent that the reasoning in an opinion is erroneous, and less injury would result from overruling it than following it, it becomes as much the duty of the court to correct it as to follow it under other conditions. Of this we are satisfied in the instant case. By this reasoning no vested rights were obtained, and no such harm or damage can be sustained by overruling it as might result when a rule of conduct announced by the court had been relied upon in the business transactions of the country, and had been acted upon as a rule of property and contracts.

Can it be said that the equalizing of assessments between the assessing districts of a county is a matter of purely local concern, and that the State has no interest in the matter?

Section 2 of art. 10 of the Constitution of this State provides as follows:

"The legislature shall provide by law for an annual tax sufficient with other resources to pay the estimated expenses of the State government, the interest on any State debt and such deficiency as may occur in the resources."

Section 3 of the same article provides, in part, that:

"The legislature shall provide by law a uniform rule of taxation, except on property paying specific taxes, and taxes shall be levied on such property as shall be prescribed by law."

Section 7 of the same article provides that:

"All assessments hereafter authorized shall be on property at its cash value."

Equalization is an important factor in taxation, and, under our present system, the levy and collection of taxes is incomplete without it. The State board of equalization, under the Constitution, equalizes the

State tax as between the various counties, and it would seem that the constitutional provision requiring the legislature to provide a uniform rule of taxation is for the purpose of equally distributing, as between taxation districts and individuals, the burden of taxation. In order to do this, it follows as a natural consequence that the legislature is empowered to create the necessary agencies to carry into effect the duty thus imposed. The present act is an amendment to the general tax law for the purpose of permitting the State, through a State agency, its State board of tax commissioners, to see that the State tax imposed by it upon its tax-paying subjects is equitably distributed according to the fundamental principle of taxation—that the burden shall be equally distributed. We do not think that it can properly be said that the State is concerned only in getting a certain sum of money from each county, and is not concerned in the manner of the distribution of this burden between the districts and individuals of the county paying the same. The authority given the board of State tax commissioners to review the assessments made by local authorities was sustained by this court in *Board of State Tax Com'rs* v. *Board of Assessors*, 124 Mich. 491 (83 N. W. 209), and *Board of State Tax Com'rs* v. *Quinn*, 125 Mich. 128 (84 N. W. 1). It seems to us, as we said in the minority opinion in the *Zimmer Case:*

"It is as well within the legislative power to provide the agency which shall finally determine when a proper equalization has been made as it is to provide the agency which shall determine when taxable property has been properly listed and valued upon assessment rolls. The legislative provision is no more an invasion of the right of local self-government in one case than it is in the other."

In a similar case in Wisconsin, *State, ex rel. Brown*

*County*, v. *Myers*, 52 Wis. 628, 630-632 (9 N. W. 777), the supreme court of that State said:

"It is not easy to discover any well-founded objection to this law. It surely appears to be a wholesome enactment—one intended to produce, in certain cases, greater uniformity and fairness in the assessments of property, and thus insure greater equality in the burdens of taxation. For it is manifest, if there is not a fair valuation of property for the purposes of taxation, there can be no just apportionment of the tax. * * * An examination of the law in question will show, we think, that it does not in any way unwarrantably invade the power of the county board, or interfere with the right of local self-government. Its object, as we have said, is to secure greater uniformity and equality in the valuation of the taxable property as between the cities and towns of the county. The matter of listing and estimating property, and of equalizing assessments for the purpose of taxation, is one essentially within the control of the legislature. * * * The law is evidently in furtherance of justice and fairness in the equalization of values, and does not seem open to any constitutional objection; for this whole matter is within the control of the legislature, which, doubtless, might abolish the present system and create a State board for the assessment and equalization of the value of the taxable property of the State."

The State board of equalization fixed the cash value of Midland county at $7,000,000. The total equalized value of the county, as fixed by the board of supervisors and by the board of State tax commissioners in its equalization of the townships of the county was $6,500,000. The proviso of section 34 of Act No. 201 of the Public Acts of 1913, the act in question, is as follows:

"That the said board of State tax commissioners shall not upon petition filed under the provisions of this act, increase the aggregate valuation of said county."

It is maintained and argued that the act is uncon-

stitutional because this proviso is opposed to the section of the Constitution providing that all assessments shall be at cash value; that the power to equalize is limited to the aggregate fixed by the board of supervisors, and not at what the real cash value of the property is. This, in our opinion, is answered by the fact that equalization between the assessing districts of a county does not in any manner depend upon the aggregate valuation, but solely upon the per cent. allotted to the various assessing districts on the basis accepted by the equalization board. In other words, the result as between the assessing districts would be the same, whatever the aggregate valuation might be, providing the distribution of the taxes were made at the proper percentage.

The argument is made that, giving the authority to the State agency, the board of State tax commissioners, to review the equalization made by the county board of supervisors leads to the adoption of a paternalistic form of government, and would destroy the constitutional principle of the right of self-government in local affairs. Sound reasons might be advanced for an entire separation of State and local finances, and thus make the raising of taxes by direct assessment under the *ad valorem* system a matter of purely local concern. However, as long as the system now in vogue in this State remains, and it seems to be well established, the State is interested in all matters which involve in any way the raising of its revenues. The appellate body provided for in the act is a disinterested, fair, and competent State agency, and the authority delegated in the act should tend to prevent unjust and arbitrary actions by local bodies.

The writ of mandamus will issue as prayed for in relators' petition.

STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred with KHHN, J. MOORE, J., concurred in the result.

McALVAY, C. J. *(dissenting)*.  The principal question involved in these proceedings was first before this court in the case of *Zimmer* v. *Bay County Sup'rs,* 159 Mich. 213 (123 N. W. 899), where the constitutionality of Act No. 292 of the Public Acts of 1909 was determined.  Since that time, evidently for the purpose of curing its infirmity, that act was amended by Act No. 201 of the Public Acts of 1913 by giving the power and authority then reposed in a nonresident committee to the board of State tax commissioners and, respondent board of supervisors, having been ordered by the tax commissioners to reconvene and reapportion the taxes as fixed by them, has raised the question of the unconstitutionality of the amended act.  The only change in the situation is that a State agency is now authorized to perform what the original act delegated to a committee.  To determine the case in favor of the relators it has been found that it is necessary to overrule *Zimmer* v. *Bay County Sup'rs, supra,* which, if followed, is admitted must result in holding the act, as amended, to be unconstitutional.

This is an admission that the identical question is again presented in the instant case, and it is proposed to reverse the former case upon the ground that its reasoning is erroneous.  The reasoning employed and relied upon is the reasoning of the minority opinion in *Zimmer* v. *Bay County Sup'rs.*  I cannot concur in such a conclusion.  That case received the most careful and mature consideration, and a majority of this court decided that the law was unconstitutional because repugnant to the well-settled principles of local self-government.  No new view except that the authority has been delegated to a State agency has been presented in the briefs filed by relators in the instant case, and no new arguments or authorities are relied upon.  A careful re-reading of the *Zimmer Case,* together with the authorities cited, is more than

ever convincing to me that its conclusions are both logical and correct, even when considering the use of a State agency. I am convinced that the instant case is one which should be controlled by that case, and the doctrine of *stare decisis* should be applied. The writ of mandamus should be denied.

BROOKE, J., concurred with McALVAY, C. J.