# OCTOBER TERM, 1916.

BOARD OF STATE TAX COMMISSIONERS *v.* KOHLER.

TAXATION—STATE TAX COMMISSION—REVIEW OF ASSESSMENT.
Under the general tax law the State tax commissioners are given authority to inspect the tax rolls, after they have been passed on by the various reviewing boards, and, if the investigation warrants, may issue an order to the assessor whose rolls are under review to appear with his assessment rolls therefor, and the State board is authorized not only to inspect and investigate the rolls, but also to examine witnesses and documents. Sections 148-150. Neither the order by the commissioners nor the petition for mandamus is fatally defective for failure to make it apparent how it came to be shown that the assessment required an investigation or review.

Mandamus by the State Board of Tax Commissioners against John Kohler and others, constituting the board of assessors of the city of Detroit, to compel respondents to turn over to relators for inspection and review the assessment rolls of said city. Submitted October 24, 1916. (Calendar No. 27;556.) Writ granted November 6, 1916.

*Grant Fellows,* Attorney General, and *L. W. Carr,* Assistant Attorney General, for relator.

*Harry J. Dingeman* and *Vincent M. Brennan,* for respondents.

STONE, C. J. This is a petition for mandamus to require the defendants, who constitute the board of assessors of the city of Detroit, to turn over the assessment rolls of said city to plaintiff, the board of State tax commissioners, to enable it to review the same.

(420)

An order to show cause having been made, and defendants having answered, we are met, at the threshold, with the objection that the plaintiff's petition is fatally defective because it does not set forth a state of facts such as is required by the statute to exist before an order looking to the review of assessments, such as the order referred to in the petition, Exhibit 1, may be issued. Paragraph 4 of plaintiff's petition reads as follows:

"That it was made to appear to your petitioners, constituting and composing the board of State tax commissioners, that the assessments of real and personal property in the city of Detroit, and in the various wards thereof, as the same appear on said rolls, have been made so irregularly and so unlawfully that a review of said rolls by your petitioners, acting as the board of State tax commissioners aforesaid, in accordance with the statute in such case made and provided, was and is necessary and imperative in order that compliance with the law relating to the assessment and collection of taxes may be had."

The preamble to the order issued by the plaintiff is, in part, as follows:

"Whereas, it has been made to appear to said board of State tax commissioners that property in said city has been so irregularly and unlawfully assessed that adequate compliance with law cannot be secured except by a review of said assessment rolls," etc.

Paragraphs 4 and 5 of the answer of defendants are, in part, as follows:

"(4) Respondents have no knowledge as to what has been made to appear to relator, and therefore neither admit nor deny the allegation contained in paragraph 4 of said petition and leave relator to its proof.

"(5) Respondents admit that a document, purporting to be a valid order, was issued by relator, as described in paragraph 5 of its said petition, and admit that Exhibit 1 is a true copy of such document; but

respondents deny that such order was issued in conformity with any valid statute of the State of Michigan, and are advised and aver that such order issued without any authority in law, and contrary to the Constitution and laws of the State of Michigan, and especially of the charter of the city of Detroit."

Section 152 of the general tax law, as amended by Act No. 153, Pub. Acts 1913, being the section of the act relied on herein by plaintiff, reads:

"After the various assessment rolls required to be made under this act or under the provisions of any municipal charter shall have been passed upon by the several boards of review, and prior to the making and delivery of the tax rolls to the proper officer for collection of taxes, the said several assessment rolls shall be subject to inspection by said board of State tax commissioners or by any member or duly authorized representative thereof and in case it shall appear to said board after such investigation, or be made to appear to said board by written complaint of any taxpayer, that property subject to taxation has been omitted from said roll, or individual assessments have not been made in compliance with law, the said board may issue an order directing the assessor whose assessments are to be reviewed to appear with his assessment roll and the sworn statements of the person or persons whose property or whose assessments are to be considered at a time and place to be stated in said order, said time to be not less than seven days from the date of the issuance of said order, and the place to be at the office of the board of supervisors at the county seat or at such other place in said county in which said roll was made as said board shall deem most convenient for the hearing herein provided. * * *"

The remainder of the section is immaterial to the point under consideration.

Specifically stated, the objections of defendants to the sufficiency of the order and petition are as follows:

"(1) Nowhere is it set forth in this order that, prior to its issuance, the assessment rolls had been inspected by the board of State tax commissioners, and that it

appeared to said board after such investigation, or by the written complaint of a taxpayer, that property subject to taxation had been omitted from the rolls, or individual assessments had not been made in compliance with the law.

"(2) Nowhere is it set forth in the petition that the order, Exhibit 1, was preceded by an inspection and an investigation by relator of the assessment rolls prepared by respondents, or by a written complaint of a taxpayer, and that such investigation or such complaint made it appear that property had been omitted from the rolls, or that assessments had been made in noncompliance with the law. The order of the commission and the petition both recite that 'it was made to appear' to relator that property in Detroit had been irregularly and unlawfully assessed."

It is further urged by defendants that, in so far as the petition shows the alleged unlawful assessments may have been brought to the attention of the plaintiff by a verbal complaint of a taxpayer, or as the result of an inspection and investigation of the rolls made by some one other than the board of State tax commissioners, there are numberless conceivable mediums of information through which it "may have been made to appear" to plaintiff that assessments made by defendants were irregular or unlawful, but that there are only two mediums of information mentioned in the statute which would authorize the issuance of an order such as plaintiff attempted to make here; that the statute requires the happening of either one of two well-defined conditions precedent before an order, reviewing assessments and directing the assessor to appear with his rolls, may be made. And it is claimed that the board of State tax commissioners has no power under the statute to make such order, unless it is made to appear to it that property has been omitted from the rolls, or that assessments have been made in disregard of the law, after it has made its own inspection and investigation of the rolls, or upon receipt

by it of the written complaint of a taxpayer, and that
the order and petition in the present case are defect-
ive for failure to show the existence of one or the
other of these facts.

It is well that we note here the changes that have
been made, from time to time, in said section 152 of
the general tax law. As originally enacted in 1899,
this section fixed no condition precedent to a review
by the State board such as is contained in the present
law. The relevant portion of that original act reads:

"* * * And in case it shall appear, or be made
to appear to said board that property subject to taxa-
tion has been omitted from said roll, or individual
assessments have not been made in compliance with
law, the said board may issue an order," etc. Pub.
Acts 1899, No. 154, § 152.

It will be observed that the act did not specify how
or from what source the irregularity should be made
to appear to the State board. It merely required that
it appear, or be made to appear, in some way to the
board that an irregularity had occurred in order to
authorize an order for review. The 1899 act was first
amended by Act No. 281, Pub. Acts 1905, so that the
clause under consideration was made to read:

"And in case it shall appear, or be made to appear,
by written complaint of any taxpayer residing in the
assessment district, to said board that property sub-
ject to taxation," etc.

It thus appears that where before the board could
act on its own motion whenever it received from any
source information pointing to irregularities, under
the act of 1905, it could only order a review when the
same was initiated by a resident taxpayer's written
complaint. The next amendment to section 152 was
made by Act No. 8, Pub. Acts 1909, which eliminated
the words following "taxpayer," viz., "residing in the

assessment district," so that the section was made to read:

"And in case it shall appear, or be made to appear, by written complaint of any taxpayer to said board that property," etc.

After this amendment a taxpayer residing outside the assessment district could file the complaint against the action of the local assessors. In 1911 the legislature, by Act No. 17, again amended section 152, and by such amendment once more restored to the board the power to call a review on its own motion upon compliance with certain conditions. The 1911 amendment read:

"And in case it shall appear after investigation by said board, or be made to appear to said board by written complaint of any taxpayer, that property," etc.

This gave the board the right to order a review on its own motion after investigation. The act of 1911, it will be noted, did not specify in terms what sort of an investigation should be conducted. A further amendment was made by Act No. 153, Pub. Acts 1913, which act put the section into the form in which it stands today. The semicolon which appeared in the 1911 act at the end of line 7 of section 152, just before the clause beginning "and in case it shall appear after investigation by said board," has been omitted, and the word "such" has been inserted in this clause just before the word "investigation." The 1913 act, after stating that the local assessment rolls shall be subject to inspection by the State board, provides that "after such investigation" the board may order a review, and may direct the assessor to appear thereat with his rolls.

It is urged that plaintiff's petition would not show good grounds for the issuance of the writ if the 1911 act were now in force, for the reason that the petition

does not set forth that an investigation of any sort, or a taxpayer's written complaint, preceded the issuance of the order for review. This court has recognized the changes which have been made, from time to time, in the statute. *Newport Mining Co.* v. *City of Ironwood*, 185 Mich. 668 (152 N. W. 1088). The question raised by the brief of defendants is purely a technical one, which does not reach the merits of the case. It is the claim of plaintiff that the question is not properly raised by the answer, and is an afterthought of counsel. But, treating the question as properly raised by the pleadings, we think defendants' criticism of the petition and order too technical and narrow.

The sole point raised is that the order and petition should affirmatively allege that the former was based on an inspection of the rolls. We do not think that position well taken; but, if it were, it may be presumed that the State board had procured its information in the manner prescribed by the statute. This was official action, and we see no reason why the general presumption as to the validity of official action might not properly be invoked. But the statute does not in terms require an inspection of the rolls by the board. The statute simply provides that:

"The said several assessment rolls shall be subject to inspection by said board of State tax commissioners or by any member, or duly authorized representative thereof." Pub. Acts 1913, No. 153, § 152.

The board might get its information from any of the different sources pointed out by the statute. It is well to examine the preceding sections of the statute.

Section 148 provides for special meetings of the board to be held at any place most convenient. The board and the members thereof, or any duly authorized representative thereof, shall have access to all books, papers, documents, statements, and accounts on

file or of record in any of the departments of State, subject to the rules and regulations of the respective departments relative to the care of public records. The board and the members thereof, or any duly authorized representatives thereof, shall have like access to all books, papers, documents, statements, and accounts on file or of record in counties, townships, and municipalities. Said board may subpœna witnesses, and has power to examine witnesses under oath, said oath to be administered by any member of said board or by the secretary thereof. The board is then given power to examine books, papers, or accounts of any corporation, firm, or individual owning property liable to assessment for taxes, general or specific, under the laws of the State; and any officer or stockholder of any such corporation, any member of any such firm, or any person or persons who shall refuse to permit inspection, or neglect or fail to appear before said board in response to its subpœna, or to testify as provided for therein, shall be deemed guilty of a misdemeanor, etc.

By section 150 it is made the duty of the board to have and exercise general supervision over the supervisors and other assessing officers of this State, and to take such measures as will secure the enforcement of the provisions of the act, to the end that all the properties of this State liable to assessment for taxation shall be placed upon the assessment rolls, and assessed at their actual cash value, to confer with and advise assessing officers as to their duties under the act, and to institute proper proceedings to enforce the penalties and liabilities provided by law for public officers, officers of corporations, and individuals failing to comply with the provisions of the act. By subdivision 3 of said section 150, it is made the duty of the board to receive all complaints as to property liable to taxation that has not been assessed, or that has been

fraudulently or improperly assessed, and to *investigate* the same, and to take such proceedings as will correct the irregularity complained of, if any is found to exist.

It is too narrow a view to say that the words "such investigation," found in section 152, refer simply to the "inspection" of the rolls; it is more reasonable to hold that they refer to all the other avenues open to investigation. The words "inspection" and "investigation" are not synonymous; and it is more reasonable to say that the words "such investigation" refer to the investigation, and examination of witnesses and documents referred to in the preceding sections, as above noted. While the rolls are subject to the inspection of the board, the statute does not make it obligatory upon the board to make inspection thereof. A mere inspection of the rolls probably would not determine whether there was an improper assessment, but "such investigation," as is mentioned in the preceding sections of the statute referred to, would naturally tend to throw light upon the subject. In construing section 152 we should look, not only to its general purpose, but also to the other provisions of the tax law that are in point. So considered, an intent is manifest to confer on the board of State tax commissioners authority to conduct a review whenever it is made to appear that the local assessment rolls have not been prepared in accordance with the law; in other words, when it appears that property is not being assessed at its true cash value, or that property is being omitted altogether. As stated, an inspection of the rolls alone might not, and probably would not, determine the existence of either fact.

Neither the order nor the petition is ideal or as full and explicit as might be desired, but we think that neither is fatally defective, and as the objection urged does not go to the merits of the case, and, having reached the conclusion that the act cannot be given

the construction contended for, and that it was intended to give large powers of review to the State board, we are constrained to hold that the writ of mandamus should issue as prayed for by plaintiff.

No other question is raised by the brief of counsel.

The other questions raised by the answer have been disposed of adversely to the contention of defendants by the decisions of this court. See *Board of State Tax Com'rs* v. *Board of Assessors,* 124 Mich. 491 (83 N. W. 209) ; *Board of State Tax Com'rs* v. *Quinn,* 125 Mich. 128 (84 N. W. 1) ; *Bialy* v. *City of Bay City,* 139 Mich. 495 (102 N. W. 1033) ; *Attorney General* v. *Board of Supervisors,* 178 Mich. 513 (144 N. W. 883).

Let the writ issue.

KUHN, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.