DETROIT EDISON CO. *v.* CITY OF DETROIT.

1. TAXATION—STATE TAX COMMISSION—REVIEW OF TAX ROLLS.
    The State tax commission has a right to review the tax rolls after final review by the local board and such review by the commission may be either special or general.

2. SAME—HOME RULE CITIES—CHANGE OF ASSESSMENT BY STATE TAX COMMISSION.
    The State tax commission may change individual assessments in cities even though they may be under home rule charters, notwithstanding any provisions contained in the charter.

3. SAME—STATE TAX COMMISSION AS FINAL ARBITER.
    The final arbiter of the value of property for taxing purposes which, when it has jurisdiction, determines the same finally and conclusively is the State tax commission.

4. SAME—VALUATION SAME FOR STATE, COUNTY AND LOCAL TAXES.
    Since there cannot be two values of the same property fixed by the same body for the same purpose at the same time, the valuation as fixed by the State tax commission is final, con-

clusive, and binding upon a city, not only for the purpose of levying and assessing State and county taxes but for all other purposes of local or general taxation.

5. SAME—STATE TAX COMMISSION—REVIEW OF TAX ROLLS.
    The State tax commission possesses only those powers conferred upon it by statute and its review and examination of assessment rolls is limited thereby (1 Comp. Laws 1929, § 3547).

6. SAME—STATE TAX COMMISSION—TIME FOR REVIEW OF TAX ROLLS.
    The time for inspection of assessments by the State tax commission is limited by statute to the period between the completion of the work of the several boards of review and the delivery of the tax rolls to the proper officer for collection of taxes (1 Comp. Laws 1929, § 3547).

7. SAME—STATE TAX COMMISSION—INCREASE OF TAX AFTER TAX ROLLS WERE DELIVERED TO COLLECTION OFFICERS.
    Action of State tax commission in increasing assessment on tax rolls after same had been delivered to home rule city's treasurer for collection, on proceedings initiated by commission's own motion after such delivery, was without the power of the commission; the resulting additional personal property tax was illegally imposed and the taxpayer entitled to a permanent injunction restraining the enforcement of such additional tax for the year in question (1 Comp. Laws 1929, § 3547).

Appeal from Wayne; Marschner (Adolph F.), J. Submitted January 16, 1941. (Docket No. 52, Calendar No. 41,439.) Decided May 21, 1941.

Bill by Detroit Edison Company, a New York corporation, against City of Detroit to cancel and enjoin collection of increased personal property tax for the year 1939. Bill dismissed. Plaintiff appeals. Reversed, and decree entered canceling the increase of tax.

Oxtoby, Robison & Hull, for plaintiff.

Paul E. Krause, Corporation Counsel, and John H. Witherspoon, Chief Assistant Corporation Counsel, for defendant.

BUSHNELL, J.   Plaintiff filed its bill of complaint to enjoin the enforcement and collection of an increase in its personal property tax for the year 1939, which was levied by defendant city of Detroit after a review by the State tax commission of the assessment rolls for that year.   Plaintiff's tax liability had been determined by the city of Detroit, and on July 1, 1939, the tax rolls of the city were delivered by the comptroller to the treasurer.   On these rolls plaintiff's personal property was assessed in the sum of $80,272,500, and its personal property tax was computed to be $2,196,737.24.

On July 11, 1939, the State tax commission, on its own motion, initiated proceedings to review assessments and notified plaintiff that it desired certain information regarding its property.   On August 22d the State tax commission acknowledged receipt of certain information from plaintiff and stated that it would hold a hearing on the assessment sometime during the week beginning September 18th, and that it intended to increase plaintiffs' personal property assessment to $89,250,000.   On September 11th, plaintiff was notified that this hearing would be held on September 19th.   On September 25th the State tax commission increased plaintiff's personal property assessment by $4,004,000, making the total assessment $84,276,500.   Upon receipt of notice to this effect from the State tax commission the board of assessors of the city of Detroit notified the city council of the increase in the assessment, making a resulting increase in the tax of $109,573.46, and asked the council to instruct the city treasurer to add this increase to the tax rolls.   This was done.

On January 23, 1940, plaintiff filed its bill of complaint against the city of Detroit in which it sought a decree holding the increase in the tax illegal, null and void, and an injunction restraining its collec-

tion. The matter was submitted to the circuit court on an agreed statement of facts. The trial court filed a written opinion holding the action of the State tax commission a valid exercise of its powers. Plaintiff appeals from a decree dismissing its bill of complaint.

The parties agree that the controlling question is:

"Did the State tax commission have jurisdiction after July 1, 1939, to institute upon its own motion proceedings to review and modify the assessment upon plaintiff's personal property in the city of Detroit for the year 1939 which had been fully and finally confirmed by the duly designated officials of the city of Detroit in accordance with the city charter and the tax rolls placed in the hands of the city treasurer for collection?"

1 Comp. Laws 1929, § 3547 (Stat. Ann. § 7.210), provides in part:

"After the various assessment rolls required to be made under this act or under the provisions of any municipal charter shall have been passed upon by the several boards of review, and prior to the making and delivery of the tax rolls to the proper officer for collection of taxes, the said several assessment rolls shall be subject to inspection by said board of State tax commissioners or by any member or duly authorized representative thereof and in case it shall appear to said board after such investigation, or be made to appear to said board by written complaint of any taxpayer, that property subject to taxation has been omitted from or improperly described upon said roll or individual assessments have not been made in compliance with law, the said board may issue an order directing the assessor whose assessments are to be reviewed to appear with his assessment roll and the sworn statements of the person or persons whose property or whose assessments are to be considered at a time and place

to be stated in said order, said time to be not less than seven days from the date of the issuance of said order, and the place to be at the office of the board of supervisors at the county seat or at such other place in said county in which said roll was made as said board shall deem most convenient for the hearing herein provided.''

Is it mandatory that the State tax commission begin its investigation ''prior to the making and delivery of the tax rolls to the proper officer for collection of taxes?''

In *Hudson Motor Car Co.* v. *Detroit*, 282 Mich. 69 (113 A. L. R. 1472), the board of assessors of the city of Detroit did not fix the value of plaintiff's property in sufficient time to enable plaintiff to ask for a review of its assessment by the common council, as is provided in the city charter. Title 6, chap. 2, § 6, charter of the city of Detroit. Thereafter, on May 23, 1934, plaintiff requested the State tax commission to order the board of assessors of the city to produce before it its assessment rolls and to review the assessment of plaintiff's property. The State tax commission did this, but it did not act until after the tax rolls had been delivered to the city treasurer. When it did act, it reduced plaintiff's valuation from $12,140,180 to $11,000,000. Plaintiff paid half of its city tax under protest and filed a petition for adjustment of its assessment in accordance with the findings of the State tax commission. The city of Detroit in the *Hudson Case* took the position that the State tax commission lost jurisdiction when the tax rolls were delivered to the city treasurer. The trial court adopted the city's view of the matter and this court ordered a judgment in favor of plaintiff and against defendant for the excess tax, holding that the State tax commission could reduce the assessment after July 1st on a

petition filed with it prior to that date. This court said (p. 83):

"It is claimed the determination of the State tax commission fixing the valuation of the property involved came too late. The rule is that time is not mandatory, but directory, in proceedings of this character. *Smith* v. *Crittenden,* 16 Mich. 152; *Peninsula Iron Co.* v. *Township of Crystal Falls* [60 Mich. 79]; *Barnes* v. *Wayne County Supervisors,* 194 Mich. 540."

In the *Hudson Case* the complaint was made by the taxpayer on May 23d and proceedings were begun by the State tax commission prior to July 1st, when the tax rolls were turned over to the city treasurer for collection as required by the provisions of the city charter. In the instant case the State tax commission did nothing until after July 1st, viz., July 11th, and then only on its own motion.

Plaintiff contends that the statute as applied to the facts in the instant case made it mandatory for the State tax commission to inspect and investigate the assessment rolls between May 4, 1939 (the date when the common council of the city of Detroit, sitting as a board of review, finally confirmed the assessment rolls), and July 1, 1939 (the date when the tax rolls were delivered to the city treasurer for collection). See Detroit city charter, title 6, chap. 2. Plaintiff does not claim that the commission lacked the power to change an assessment after July 1st but insists that it must have begun its proceedings prior to that date.

Plaintiff bases its claim, that the review by the State tax commission must be initiated before the tax rolls are delivered to the city treasurer, on the holding of this court in *Board of State Tax Commissioners* v. *Cady,* 124 Mich. 683. The *Cady Case* was not concerned with the time limited for incep-

tion of proceedings for review. The *Cady* decision was based upon the conclusion that a subsequent change in assessment by the board of State tax commissioners would be of no effect, because the Port Huron city charter failed to provide for changes in the tax roll subsequent to their delivery to the city treasurer for collection. This conclusion is apparent from the following language:

"It will be seen, therefore, that but one tax roll is provided for. There is no authority given to the comptroller to change this roll, or to make any corrections on it which may have been made on the assessment roll. We think, therefore, that the circuit judge was right in holding that, as to any change in this assessment after the original tax roll was made up, the city charter so far conflicts with the amendments to the tax law as to render such amendments inapplicable. Manifestly, it would serve no purpose to make a change on the assessment roll if the tax roll was not to be changed. There is no express authority to make any change in the tax roll, and we think it cannot be read into the statute."

But in *Hudson Motor Car Co.* v. *Detroit, supra,* this court held that changes made by the State tax commission were binding on municipalities even though the tax rolls had been placed in the hands of the treasurer for collection prior thereto. At pages 81 and 82 of the opinion in the *Hudson Case* it is said:

"The State tax commission has a right to review and examine the rolls after the final review of the local board and such review by the State tax commission may be either special or general. In a case like that under consideration, it has a right to increase or decrease the assessment of the property of any person assessed thereon. *Bialy* v. *Bay City,* 139 Mich. 495. It may change individual assessments in cities, even though they may be under home

rule charters, notwithstanding any provisions contained in the charter thereof. *Bialy* v. *Bay City, supra.* Review of assessments by local assessing officers and of the action of local boards of review by the State tax commission would serve no useful purpose if no change in the assessment roll could be made; and no change in the assessment roll made by the State tax commission would be of any importance if the tax levied and assessed upon such valuation was not to be changed. *Board of State Tax Com'rs* v. *Cady,* 124 Mich. 683.

"Under the Constitution and laws of this State, the final arbiter of value for taxing purposes which, when it has jurisdiction, determines the same finally and conclusively, is the State tax commission. That value is fixed for the purposes of taxation. It is the basis of the levy and assessment of taxes. There cannot be two values of the same property fixed by the same body, for the same purpose, at the same time. The valuation as fixed by the State tax commission is final, conclusive and binding upon the city, not only for the purpose of levying and assessing State and county taxes, but for all other purposes of local or general taxation. This is the practice which has always prevailed in this State 'both at the time of the adoption of the Constitution and at the present, the taxes levied for State purposes are based on the same assessment as are those collected for local use.' *Board of State Tax Com'rs* v. *Board of Assessors of Grand Rapids,* 124 Mich. 491. See, also, *Attorney General, ex rel. Barnes,* v. *Midland County Supervisors,* 178 Mich. 513."

Thus, we concluded in the *Hudson Case* that the power of the State tax commission to change assessments is superior to limitations imposed by local charter provisions.

However, the State tax commission possesses only those powers conferred upon it by statute and its review and examination of assessment rolls is

limited thereby. (See 1 Comp. Laws 1929, § 3547 *et seq.* [Stat. Ann. § 7.210 *et seq.*].) By explicit terms the time for inspection of assessments by the commission is limited by the cited statute to the period between the completion of the work of "the several boards of review" and "the delivery of the tax rolls to the proper officer for collection of taxes."

In *Bialy* v. *Bay City*, 139 Mich. 495, 504, decided in 1905, the court cited *Board of State Tax Commissioners* v. *Board of Assessors of Grand Rapids*, 124 Mich. 491, and held that, under the then existing law (Act No. 154, Pub. Acts 1899), the board had the power "at any time prior to the equalization and apportionment of State and county taxes, to review the assessments and add to the rolls assessments against persons omitted therefrom, or property omitted, provided the same is done according to the provisions of the statute."

For more than 35 years since the *Bialy* decision the legislature has not seen fit to grant additional power to the present commission, its predecessor, the "State tax department," or its predecessor, the "board of State tax commissioners."

The *Hudson Case, supra,* did not overrule or modify the *Cady* or *Bialy Cases,* except insofar as we held that final determination of the State tax commission was valid, although made after the assessment rolls had been delivered to the city treasurer, provided action to review the assessment was commenced prior to the delivery of such rolls to the treasurer. Any action attacking the assessment, whether by the taxpayer, the taxing authorities, or the State tax commission, must be seasonably taken. *Barnes* v. *Wayne County Board of Supervisors,* 194 Mich. 540.

Our attention is not directed to any authority in support of the proposition that the State tax com-

mission may wait until after the rolls are completed and delivered to the collecting officer and then institute proceedings to review the assessment on its own motion.

The decree of the trial court dismissing plaintiff's bill of complaint is vacated and one may be entered here canceling the additional personal property assessment imposed by defendant. If necessary, a permanent injunction restraining the enforcement of such additional tax for the year 1939 may issue. Appellant may have its costs. It is so ordered.

Sharpe, C. J., and Boyles, Chandler, North, McAllister, and Wiest, JJ., concurred with Bushnell, J. Butzel, J., did not sit.