DAVIDSON *v.* HINE.

CONSTITUTIONAL LAW — LOCAL SELF-GOVERNMENT — MUNICIPAL CORPORATIONS—OFFICERS—APPOINTMENT BY GOVERNOR.

Act No. 750, Local Acts 1907, attempting to establish a bureau of public safety for the city of Bay City, the members of which are to be appointed by the governor, and giving to such bureau the entire control and management of the police and fire departments of said city, is, as to the fire department, an unconstitutional interference with the city's right of local self-government, and that feature being an essential part of the act, the entire act is unconstitutional. HOOKER, J., dissenting.

Certiorari to Bay; Collins, J. Submitted October 22, 1907. (Calendar No. 22,496.) Decided March 5, 1908.

Mandamus by James E. Davidson, Charles L. Fox, Frank E. Tyler, Charles W. Handy, and Eugene A. Dickinson, constituting the bureau of public safety of Bay City, to compel Gustaves Hine, mayor, Charles J. Barnett, comptroller, Lovell U. Grant, recorder, E. E.

Corliss, treasurer, and the common council of the city of Bay City to surrender the public records, etc., of the police and fire departments of said city. There was an order granting the writ, and respondents bring certiorari. Reversed.

*U. R. Loranger* (*Fred W. Defoe* and *James E. Duffy*, of counsel), for relators.

*S. G. Houghton*, for respondents.

CARPENTER, J. Relators claim to be a bureau of public safety for the city of Bay City. Their title to their office is derived from an appointment made by the governor of the State acting pursuant to Act No. 750 of the Local Acts of 1907. They brought this mandamus proceeding in the circuit court for the county of Bay to compel said respondents to surrender to them the custody of the public records, papers and offices pertaining to the police and fire departments of said city. The case was heard in the lower court on petition and answer, and a mandamus ordered in accordance with the prayer of relators. The proceedings are brought to this court for review by writ of certiorari.

The only question in the case arises from the contention of respondents that the act under which relators are appointed is unconstitutional. That act provides for the appointment by the governor of a bureau of public safety consisting of five members whose term of office shall be respectively one, two, three, four and five years. It confides to the bureau so appointed "full power and control and the management of the police department, and the fire department, the organization and government and discipline of such department and the custody and control of all public property, books, records and equipments thereto belonging to such department." If this act had been confined to the police department it would have been constitutional under the decision of *People* v. *Mahaney*, 13 Mich. 481. But it is not so confined. It

gives to the bureau appointed by the governor full power and control over the fire department of said city, and it is clear that this feature is an essential part of the act, and, if unconstitutional, the entire act must fall.

Has the legislature the constitutional right to vest the management of the fire department of a municipality in a board appointed by the governor? This court has consistently held, commencing at a very early day (see *People* v. *Hurlbut*, 24 Mich. 44) that municipalities have a constitutional right of self-government, and that it is an invasion of that right for the State to make appointment of officers to perform functions of a local governmental character. It was determined in *People* v. *Hurlbut*, supra, that officers having charge of the streets of a municipality, officers having charge of the water supply of a municipality, and officers having charge of the sewers of a municipality, each perform functions of a local governmental character; that the Constitution gives to the municipality, and denies to the State, authority to appoint such officers. I quote from the opinion of Justice COOLEY in that case:

"In the case before us, the officers in question involve the custody, care, management and control of the pavements, sewers, water works and public buildings of the city, and the duties are purely local. The State at large may have an indirect interest in an intelligent, honest, upright and prompt discharge of them; but this is on commercial and neighborhood grounds rather than political, and is not much greater or more direct than if the State line excluded the city. * * * These [municipal] corporations are of a two-fold character; the one public as regards the State at large, in so far as they are its agents in government; the other private, in so far as they are to provide the local necessities and conveniences for their own citizens. * * * The question recurs whether our State Constitution can be so construed as to confer upon the legislature the power to appoint for the municipalities, the officers who are to manage the property, interests, and rights in which their own people alone are concerned. If it can be, it involves these consequences: As there is no provision requiring the legislative interference

to be upon any general system, it can and may be partial and purely arbitrary. As there is nothing requiring the persons appointed to be citizens of the locality, they can and may be sent in from abroad, and it is not a remote possibility that self-government of towns may make way for a government by such influences as can force themselves upon the legislative notice at Lansing. As the municipal corporation will have no control, except such as the State may voluntarily give it, as regards the taxes to be levied, the buildings to be constructed, the pavements to be laid, and the conveniences to be supplied, it is inevitable that parties, from mere personal considerations, shall seek the offices, and endeavor to secure from the appointing body, whose members in general are not to feel the burden, a compensation such as would not be awarded by the people, who must bear it, though the chief tie binding them to the interests of the people governed might be the salaries paid on the one side and drawn on the other. As the legislature could not be compelled to regard the local political sentiment in their choice, and would, in fact, be most likely to interfere when that sentiment was adverse to their own, the government of cities might be taken to itself by the party for the time being in power, and municipal governments might easily and naturally become the spoils of party. * * * All these things are not only possible, but entirely within the range of probability. * * * It may be said that these would be mere abuses of power, such as may creep in under any system of constitutional freedom; but what is constitutional freedom? Has the administration of equal laws by magistrates freely chosen no necessary place in it? Constitutional freedom certainly does not consist in exemption from governmental interference in the citizen's private affairs; in his being unmolested in his family, suffered to buy, sell and enjoy property, and generally to seek happiness in his own way. All this might be permitted by the most arbitrary ruler, even though he allowed his subjects no degree of political liberty. The government of an oligarchy may be as just, as regardful of private rights, and as little burdensome as any other; but if it were sought to establish such a government over our cities by law, it would hardly do to call upon a protesting people to show where in the Constitution the power to establish it was prohibited; it would be necessary, on the other hand, to point out to

them where and by what unguarded words the power had been conferred. * * * The State may mould local institutions according to its views of policy or expediency; but local government is matter of absolute right; and the State cannot take it away. It would be the boldest mockery to speak of a city as possessing municipal liberty where the State not only shaped its government, but at discretion sent in its own agents to administer it; or to call that system one of constitutional freedom under which it should be equally admissible to allow the people full control in their local affairs, or no control at all. * * * I think * * * there is an express recognition of the right of local authority by the Constitution. That instrument provides (art. 15, § 14) that 'judicial officers of cities and villages shall be elected; and all other officers shall be elected or appointed, at such time and in such manner as the legislature may direct.' It is conceded that all elections must, under this section, be by the electors of the municipality. But it is to be observed that there is no express declaration to that effect to be found in the Constitution; and it may well be asked what there is to localize the elections any more than the appointments. The answer must be, that in examining the whole instrument a general intent is found pervading it, which clearly indicates that these elections are to be by the local voters, and not by the legislature, or by the people of a larger territory than that immediately concerned. I think, also, that when the Constitution is examined in the light of previous and contemporaneous history, the like general intent requires, in language equally clear and imperative, that the choice of the other corporate officers shall be made in some form, either directly or indirectly, by the corporators themselves. * * * When, therefore, we seek to gather the meaning of the Constitution from ' the four corners of the instrument,' it is impossible to conclude that the appointments here prescribed, in immediate connection with elections by the local voters, and by a convention intent on localizing and popularizing authority, were meant to be made at the discretion of the central authority."

This court has never cast doubt upon these principles, but has often recognized and applied them. It applied them in *People, ex rel. Board of Park Com'rs*, v. *Detroit Common Council*, 28 Mich. 228, and there denied

the authority of the legislature to compel the city of Detroit to establish a park. It again applied them in *Blades* v. *Board of Water Com'rs of Detroit,* 122 Mich. 366, in a case where the legislature undertook to turn over to a board of its own selection authority to determine the taxes to be raised for the maintenance of the water works of Detroit, and the act was held unconstitutional upon the ground that "the furnishing of water to the city and its inhabitants is purely a local matter." Still later it applied them in *Moreland* v. *Millen,* 126 Mich. 381, and again the authority of the State to appoint officers having charge of the streets of a municipality was denied. These authorities are, in my judgment, decisive of the case under consideration.

The right of the State to appoint officers to manage the fire department of a city cannot, in my judgment, be maintained by a single sound argument which would not also authorize it to appoint officers having the management of municipal streets or of municipal water works. It is said that a municipality derives no private corporate benefits from, and as such has no particular interest in, a municipal fire department. This points to no essential distinction between a municipal fire department and the departments managing municipal streets and municipal water works. It is only by considering a municipal corporation as an entity, distinct and separate from its inhabitants and their interests, that it can be said that it has no "particular interest in its fire department." So considered, it may just as truly be said that it has no particular interest in the department managing its streets or water works, and it may also be said that it is no part— at least, no essential part—of the plan of managing municipal streets or of municipal water works that private corporate benefits should be derived therefrom. All these departments are, however, alike in this—*and this is the important circumstance*— each is an agency of local government maintained for the benefit of the local community. I can conceive of no legitimate process of rea-

soning by which it can be urged that the State has the right to manage a municipality's fire department, and has no authority over the control of water by which the fire is to be extinguished. I submit therefore that within the principle of the foregoing decisions of this court, the act in question is unconstitutional.

It is true that our decisions have recognized the right of the State to make provisional appointments of officers who perform duties of a local governmental character, but it is conceded, as I understand the briefs of counsel, at least, it is clear that the appointments under consideration cannot be sustained as provisional appointments. We cannot then sustain the constitutionality of the act under consideration without overruling the foregoing decisions of this court. The suggestion that we should overrule them and thereby deny—or cast doubt upon— the proposition that our Constitution recognizes the right of local self-government cannot for one moment be entertained.

This court has decided in *Davock* v. *Moore*, 105 Mich. 120 (28 L. R. A. 783), that the State has a right to appoint a municipal board of health, and it is argued that there is no distinction between the function of such a board and that of a board controlling a municipal fire department. The decision of *Davock* v. *Moore* proceeds upon the ground that a municipal board of health is a State agency and not a municipal agency. It clearly recognizes the authority of *People* v. *Hurlbut*, supra, and it proceeds upon the ground that those municipal officers, and those only who are acting as agents of the State, can be appointed by the State. To claim that a municipal fire department—whose duty it is to extinguish fires within the limits of a municipality—is as much an agent of the State as is a municipal board of health, is to cast doubt upon the validity of the decision of *Davock* v. *Moore*, supra. For, in my judgment, as already shown, a municipal fire department is indistinguishable from a system of municipal water waters which is authoritatively

determined to be an agency of municipal government. We cannot, I insist, hold that a municipal fire department is an agency of the State government and that the authorities managing it can be appointed by State authority, without overruling *People* v. *Hurlbut,* supra, and other cases decided by this court. But I do not think it necessary to cast any doubt upon the correctness of the decision of *Davock* v. *Moore;* for there is a distinction between the function of a municipal board of health and that of a municipal fire department. The municipal board of health has in charge the health of the public. If it neglects its duties an epidemic is likely, indeed almost certain, to arise which will endanger the health not only of those within the municipality, but of other residents of the State who never visit it. This is not true of a municipal fire department. The duty of that department is confined to the suppression of fires arising within municipal limits. Those living outside the municipality are not affected by the performance of this duty, unless they visit the municipality or have property within its limits. The possibility of that occurrence does not make the department a State agency. If it does, all our decisions upon this subject are erroneous.

Relators insist that *Brink* v. *City of Grand Rapids,* 144 Mich. 472, is an authority supporting their contention that the State has a right to appoint the officers having charge of a municipal fire department. In that case it was determined that a municipality was not responsible for the negligence of the employés of a fire department. This decision does not rest upon the proposition that a municipal fire department is a State agency. It rests upon this proposition—a proposition conceded by relators' counsel—that "a municipality is not responsible for negligent injuries to persons or property committed by members of a fire department when engaged in work pertaining exclusively to the extinguishment of fires." Does it follow that the State has authority to appoint the officers who manage the fire department of a municipality? Un-

less it does, there is no ground for saying that *Brink* v.
*City of Grand Rapids,* supra, supports relators' con-.
tention.   It cannot be said that a municipality is responsi-
ble for all the negligence of its officers when they are en-
gaged in performing a local governmental duty, and,
therefore, it is not true that exemption from such respon-
sibility proves that they are not performing a local gov-
ernmental duty.  This is settled by our own decisions.  The
authorities heretofore cited in this opinion prove that of-
ficers having charge of the streets of a municipality are
performing local governmental duties, and that the State
has no right to appoint such officers.   And it is also
settled that in the absence of a statute establishing a con-
trary rule, a municipality is not liable for the negligence
of such officials.   See *City of Detroit* v. *Blackeby,* 21
Mich. 84; *Alberts* v. *City of Muskegon,* 146 Mich. 210
(6 L. R. A. [N. S.] 1094).   *Brink* v. *City of Grand
Rapids,* supra, is not, therefore, opposed to the reason-
ing of this opinion.   In this connection I quote from the
opinion of Justice COOLEY in *People, ex rel. Board of
Park Com'rs,* v. *Detroit Common Council,* 28 Mich.
228:

"Indeed, it is a matter of general observation that the
State does not force upon the local community these
larger powers [powers to provide for its citizens such
matters of necessity or convenience as their health, pro-
tection, comfort or enjoyment as a political community may
demand], but waits to be solicited to confer them when
the people interested shall deem them for their advantage.
This is so well understood that in many of the States it has
been decided that a municipal corporation may justly be
held, when receiving its charter, to contract in considera-
tion of the powers conferred, that its authority shall per-
form towards all parties concerned, the several duties im-
posed upon the corporation, and may be held liable in
damages for their failure to perform them.   And although
we have not followed those decisions in this State, the
two-fold character of these corporations, as organizations
on the one hand for State purposes, and on the other for
the benefit of the individual corporators, has invariably

been recognized by this court wherever there has been occasion to refer to it."

Justice COOLEY thus clearly recognizes that in Michigan the doctrine that a municipality is responsible for the negligence of its officers when engaged in performing a local governmental duty does not obtain.

It is undoubtedly true that relators' contention is sustained by decisions of the courts of some of our sister States. It is sufficient to say that those decisions are opposed to our own and to our peculiar doctrine of constitutional local self-government.

In my judgment, the statute under consideration is unconstitutional and the order granting a mandamus should be vacated.

GRANT, C. J., and BLAIR, MONTGOMERY, OSTRANDER, MOORE, and MCALVAY, JJ., concurred with CARPENTER, J.

HOOKER, J. (*dissenting*). Act No. 750, Local Acts 1907, was an act entitled—

"An act to create a bureau of public safety for the city of Bay City, to define the powers and duties of the bureau of public safety, and repeal all acts and parts of acts inconsistent herewith."

The act provided for the immediate appointment by the governor of five persons as members of said bureau, whose respective terms of office should terminate on the first day of May, i. e., one on the first day of May next ensuing, and one on each successive first day of May for the succeeding four years.

Section 2 confided to said persons full power and control over the police and fire departments of said city, the organization, government and discipline thereof, and the custody and control of all public property, books, records and equipment pertaining thereto.

Section 6 provided that all acts and parts of acts incon-

sistent with said act were repealed. It is unnecessary to refer to the other provisions. The act was approved June 28, 1907, and was given immediate effect.

On or about July 2, 1907, the governor appointed and commissioned the relators members of such bureau, and on July 8, 1907, they met at the city hall and assumed to organize as such bureau, and thereafter demanded from the respondents, viz., the mayor, comptroller, recorder, treasurer and common council of said city, the custody, control and management of said property, etc., of said police and fire departments, which demand was refused, whereupon they applied to the circuit court of Bay county for a writ of mandamus to compel such action by respondents. An order to show cause was issued and respondents filed their answer and after a hearing the writ was granted and respondents have brought the cause to this court by writ of certiorari. Several errors were assigned, which will sufficiently appear in the questions discussed. All relate to the constitutionality of Act No. 750, Local Acts 1907.

Counsel contend that the provision authorizing the appointment of members by the governor is unconstitutional for the reason that it deprives Bay City of the right of self-government. While the right contended for by respondents has been sustained in several cases, its application has been denied in others, and in all the crucial question has been held to be whether the functions of the officers provided for were those of a governmental agency. If they were, the right of local selection was held not to apply, and this crucial test has been recognized in all cases since that of *People* v. *Hurlbut*, 24 Mich. 44, the leading case upon the subject, where it is elaborately discussed.

To determine this case, it is therefore only necessary to ascertain whether the functions of the members of this board are governmental or merely relate to the private interests of the city. So far as the police department is concerned, the claim is not tenable, the question being

ruled by *People* v. *Mahaney*, 13 Mich. 481. The law attacked in that case was one having the single object of providing a police department for the city of Detroit. It abolished certain offices and provided for the appointment of certain officers by the governor. The case has often been referred to since, and it turned upon the proposition that in its police affairs the municipality was a governmental agency for preserving the public peace, and therefore within State control. See, also, 2 Dillon on Municipal Corporations (4th Ed.), §§ 974, 975.

This was followed by *People* v. *Reilly*, 53 Mich. 260, where the appointment by the governor of jury commissioners in the county of Wayne, who selected jurors for the municipal courts, was held valid.

The same was held as to the board of health of Detroit. *Davock* v. *Moore*, 105 Mich. 120 (28 L. R. A. 783), and as to tax commissioners in *Board of State Tax Com'rs* v. *Board of Assessors of Grand Rapids*, 124 Mich. 491. See, also, *People* v. *State Board of Tax Com'rs*, 174 N. Y. 417 (63 L. R. A. 884).

In the case of *Brink* v. *City of Grand Rapids*, 144 Mich. 472, an action for negligence in flushing a hydrant by members of the fire department, we held that the defendant was not liable, for the reason that the fire department was a governmental agency. This holding was in conformity to the general rule upon the subject.

In 2 Dillon on Municipal Corporations (4th Ed.), § 976, the rule is stated as follows:

"SEC. 976. (774). *City not liable for Wrongful Acts of Firemen.*—So, although a municipal corporation has charter power to extinguish fires, to establish a fire department, to appoint and remove its officers, and to make regulations in respect to their government and the management of fires, *it is not liable for the negligence of firemen appointed and paid by it,* who, when engaged in their line of duty upon an alarm of fire, ran over the plaintiff in drawing a hose-reel belonging to the city, on their way to the fire; nor for injuries to the plaintiff caused by the bursting of the hose of one of the engines

of the corporation, through the negligence of a member of the fire department; nor for like negligence, whereby sparks from the fire engine of the corporation caused the plaintiff's property to be burned. The exemption from liability in these and the like cases is upon the ground that the service is performed by the corporation in obedience to an act of the legislature; is one in which the corporation, as such, has no particular interest, and from which it derives no special benefit in its corporate capacity; that the members of the fire department, although appointed, employed, and paid by the city corporation, are not the agents and servants of the city, for whose conduct it is liable; but they act rather as officers of the city, charged with a public service, for whose negligence in the discharge of official duty no action lies against the city, without being expressly given; the maxim of respondeat superior has, therefore, no application. Nor is such a corporation liable to the owner of property destroyed or damaged by fire in consequence of its *neglect to provide suitable engines* or fire apparatus, or to provide and keep in repair public cisterns, or for *failing to provide* an adequate supply of water to extinguish fires when it has undertaken to provide a water supply. A liability on the part of the corporation was sought to be sustained upon the ground of the neglect of a *corporate* duty, but the court considered that powers of this nature conferred upon municipal corporations were legislative and governmental, and excluded the notion of implied responsibility to individuals, based on neglect or nonfeasance, and distinguished such cases from those in which the duty is purely ministerial."

See, also, the recent case of *Terrell* v. *Water Co.* (Ky.), 105 S. W. 100; 36 Century Digest, pp. 2173, 2174 and 2189.

This question is to be considered in the light of the opinion of Mr. Justice COOLEY, in *People, ex rel. Board of Park Com'rs,* v. *Detroit Common Council,* 28 Mich. 228, review of which will be found in 1 Dillon on Municipal Corporations (4th Ed.), § 72, note 1. We quote as follows:

"The ground upon which the judgment in the *Detroit Park Case,* just mentioned, rests, as appears by the opinion of the court delivered by COOLEY, J., is that a munic-

ipal corporation like that of Detroit will be found to be in part a mere public agency of the State, and in part possessed of peculiar and local franchises and rights which appertain to it as legal personality for its private (as distinguished from the public) advantage. It is admitted that 'in all matters of general concern there is no local right to act independently of the State, * * * and the State may exercise compulsory authority, and enforce the performance of local duties, either by employing local officers for the purpose, or through agents or officers of its own appointment. * * * The proposition which asserts the amplitude of legislative control over municipal corporations, when confined, as it should be, to such corporations as agencies of the State in its government, is entirely sound.'"

That case turns upon the ability of the court to say that city parks appertain to it in a private (as distinguished from the public) advantage.

Not so the fire department. In our previous quotation from Dillon, we find that the service is performed by the corporation in obedience to an act of the legislature, a duty which it has a right to impose, one in which the corporation as such has no particular interest, from which it derives no (private) corporate benefit that the officers of that department, however selected, though they be called officers of the city, are charged with a public service, and are a State agency as contradistinguished from a local municipal agency pure and simple. We adopted this view in *Brink* v. *City of Grand Rapids*, supra, and we cite that case, not because it held that city not liable for the neglect of the fire officers merely, but for the reason given for its immunity. On principle, the protection of the general public from the loss of life and property through fires in congested centers must be of concern to the entire public of the State, quite as clearly so as the functions of boards of health. It must be within the power of the legislature to provide for the prevention of fires, explosions, etc., in every city, village, and township in the State, through agents of its own, appointed by the governor, or elected by the locality to which their duties are confined, and it

would be difficult to distinguish between the duties of such and those of members of boards of health. It is said that the same might be said of sewers, water works, and public work boards, all of which have been held matters of private rather than of public interest. There may be differences of opinion about this, but whatever we might think of that question, it seems plain that the establishment of fire protection, through departments equipped for the prevention and extinguishment is not distinguishable from the prevention of the same evil through State fire wardens ( officers common in other States and countries ), the protection of public health through State and local boards of health and drain commissioners or public safety through a board of police commissioners. See *Redell* v. *Moores*, 63 Neb. 219 (55 L. R. A. 740), overruling *State, ex rel. Attorney General,* v. *Moores*, 55 Neb. 480; *Mayor, etc., of Americus* v. *Perry*, 114 Ga. 871 (57 L. R. A. 230); *City of Newport* v. *Horton*, 22 R. I. 196 (50 L. R. A. 330); *Fox* v. *McDonald*, 101 Ala. 51 (21 L. R. A. 529); *State* v. *Freeman*, 61 Kan. 90.

We think this statute within the principle of our own case, and that it is sustained by the weight of authority elsewhere. The order should be affirmed, with costs against respondents.