SIMPSON *v.* PADDOCK.

1. STATUTES—IMMEDIATE EFFECT—VALIDITY.

> Although an act of the legislature contains an immediate effect provision which is legally inoperative because the act is not one "immediately necessary for the preservation of the public peace, health, or safety," such act will go into effect after the expiration of 90 days from the adjournment of the legislature enacting it.

2. MUNICIPAL CORPORATIONS—FIRE DEPARTMENT—LOCAL SELF-GOVERNMENT.

> A city's fire department is distinctly a matter which concerns the inhabitants of the city as an organized community apart from the people of the State at large, and is peculiarly within the field of municipal activity and local self-government.[1]

3. SAME—STATUTES—CLASS LEGISLATION—DISCRIMINATION — FIREMEN—CONSTITUTIONAL LAW.

> Act No. 81, Pub. Acts 1915, providing that in all cities having full-paid members of fire departments, all officers and men receiving such pay shall be entitled without any deduction of pay to a leave of absence of one day of 24 hours in every four days and a furlough of 20 days once each year, is unconstitutional as constituting class legislation, as it applies only to a class of cities having only full-paid members of fire departments, all others, including those having only part-paid members of their fire departments, being omitted, and relates only to a particular class of employees in the cities to which it applies, confining its application only to such officers and men of the fire department as receive full pay.

4. SAME—CONSTITUTIONAL LAW—LOCAL SELF-GOVERNMENT.

> Such act is also unconstitutional as constituting special legislation and as interfering with the rights of local self-government, in violation of article 8 of the Constitution.

[1]On the right of State to control municipal fire department, see note in 15 L. R. A. (N. S.) 575.

Certiorari to Saginaw; Gage, J. Submitted January 2, 1917. (Calendar No. 27,543.) Decided March 30, 1917.

Mandamus by Charles Simpson against Hilem F. Paddock, mayor and commissioner of health and safety of the city of Saginaw, to compel respondent to put into force and effect Act No. 81, Pub. Acts 1915, in said city. From an order denying the writ, relator brings certiorari. Affirmed.

*Ernest A. Snow* and *Frank A. Rockwith,* for relator.

*Robert T. Holland,* for respondent.

STEERE, J. Plaintiff seeks by certiorari review and reversal of an order made by defendant as circuit judge for Saginaw county denying a requested writ of mandamus against Hilem F. Paddock, as mayor and commissioner of health and safety of the city of Saginaw, compelling him to put in operation, force, and effect Act No. 81, Pub. Acts 1915, entitled:

"An act to fix the leaves of absence and furloughs of certain officers and men in all cities in this State having full-paid members of fire departments."

This act, consisting of two short sections (1 Comp. Laws 1915, §§ 3471, 3472), is as follows:

"SECTION 1. In all cities of this State having full-paid members of fire departments, all officers and men receiving such full pay shall be entitled without any deduction of pay to a leave of absence of one day of 24 hours off duty in every four days and a furlough of 20 days once in each year.

"SEC. 2. All acts or parts of acts inconsistent with or contravening any of the provisions of this act are hereby repealed.

"This act is ordered to take immediate effect."

The act was approved April 27, 1915. The immediate effect provision, which was forbidden by our

Constitution unless "immediately necessary for the preservation of the public peace, health or safety," by lapse of time is rendered of little importance, inasmuch as the act would in any event take effect at the expiration of 90 days from adjournment of the legislature which enacted it. *Attorney General* v. *Lindsay*, 178 Mich. 524 (145 N. W. 98).

At the time of the passage of this act, the city of Saginaw had a fire department consisting of 54 members regularly employed and devoting their entire time to that service, sleeping at their respective engine or hose houses. It also had 4 members designated "call men," who were allowed to work at other employment in the vicinity of their respective stations, where they slept, ready to respond to alarms, and received a much lower rate of compensation than those devoting their time exclusively to serving as firemen. In August following the passage of this act, plaintiff, Simpson, and some 50 other firemen of the city, presented to its council a petition requesting that the act be put into effect as soon as possible. The petition was referred "to the commissioner of health and safety," who was the mayor. He subsequently made a report to the council discussing the matter at length, and pointed out, amongst other things, that it would cost the city approximately $7,000 per annum to put the law into operation, that under the condition of the budget for the fiscal year no funds were available for that purpose, that he was advised by the city attorney the legality of the act was questioned, and recommended that the matter be referred to the council, city attorney, and board of estimates as a committee. This report was, by resolution, received, and the recommendation concurred in. That part of the committee consisting of the "council" subsequently reported (apparently to itself) that after long discussion it was decided by said committee that the law should be lo-

cally administered according to its provisions, and it was accordingly so recommended. This report contained the following:

"No money being available from the original appropriation of the salary item of the fire department fund, your committee recommends that the board of estimates be requested to authorize an additional appropriation of $5,000 for this purpose, the same to be transferred from the contingent fund."

Neither the city attorney nor board of estimates signed this report, and the latter refused to add the recommended appropriation of $5,000 to the fire department fund, because, it was stated, of questions raised as to legality of the act, the state of the city's finances, and local conditions as to taxation.

Thereafter plaintiff, Simpson, made demand upon defendant Paddock, as mayor and commissioner of health and safety, that he put said act into force and effect and grant plaintiff, as one of the full-paid members of said fire department, a leave of absence of one day of 24 hours in every 4 days and a furlough of 20 days once in each year. The mayor having declined, or failed, to comply with his request, plaintiff filed a petition with the circuit court of Saginaw county for an order to compel compliance. An order to show cause was thereupon issued and an answer filed. Both the petition and answer were later amended, and after a hearing the writ of mandamus prayed for was denied; the court saying, among other things:

"My conclusion is that the act in question is a violation of the right of the city to local self-government, and that, if the province of the board of estimates to determine the number and compensation of the employees for any department of the city government can be abrogated by this act, the legislature may by successive acts of this kind abrogate altogether, by piecemeal, all of the authority of the board of estimates."

Since January 1, 1914, the city of Saginaw has been organized and conducting its municipal affairs under a charter adopted by its electors pursuant to the provisions of the so-called "home rule law." The scheme of this charter is a commission form of government, with the mayor as chief executive and four councilmen, who, with the mayor, administer the affairs and perform the legislative functions of the city. The power to make appropriations, raise money by taxation, and in general manage the resources and finances of the city, is vested in the council, subject, however, to a negative control or power of restriction as to indebtedness and the annual budget by a board of estimates. All estimates must be submitted to said board and approved by it "before any money shall be raised, or taxes levied and collected, for the purpose of any funds mentioned in this charter," and it is "made unlawful for the council of said city to create any indebtedness or expend any moneys as to items specifically disallowed and disapproved by said board of estimates." For administration purposes the municipal activities are divided into five departments—health and safety, finance, public works, light, water and sewers, and parks and cemeteries, each department directly in charge of the mayor or one of the four councilmen acting as a commissioner. As commissioner of health and safety, the mayor is head of the fire department with general supervision over it, and it is urged for plaintiff that he is the proper official to put the law into effect as to the firemen under his control; the council having so decided, and there being a contingent fund of the city by which it is claimed the expenses may temporarily be defrayed until other provision is made, as it ultimately must be.

While the question of the want of available funds as justification for refusal to recognize the act is raised and discussed by counsel, we agree with the

trial court that the more important and controlling issue urged in behalf of the city is the validity of said Act No. 81, which is attacked as unconstitutional and void for various reasons, amongst which are: That it is palpably a local and special act which interferes with a matter of purely local self-government in which the State at large has no direct interest, abridges the right of the city to contract, and denies it equal protection under the law, is capricious and unreasonable class legislation, and that under the provision of article 8 of the Constitution State legislation in reference to cities incorporated under the home rule act of 1909 is prohibited in matters of purely municipal concern, except through or by amendment of such general law.

It may be first noted as well settled that a city's fire department is distinctly a matter which concerns the inhabitants of the city as an organized community apart from the people of the State at large, peculiarly within the field of municipal activity and local self-government. *People* v. *Hurlbut,* 24 Mich. 44 (9 Am. Rep. 103) ; *Davidson* v. *Hine,* 151 Mich. 294 (115 N. W. 246, 15 L. R. A. [N. S.] 575, 123 Am. St. Rep. 267, 14 Am. & Eng. Ann. Cas. 352) ; *Popper* v. *Broderick,* 123 Cal. 456 (56 Pac. 53) ; *Lexington* v. *Thompson,* 113 Ky. 540 (68 S. W. 477, 57 L. R. A. 775, 101 Am. St. Rep. 361) ; *State* v. *Moores,* 55 Neb. 480 (76 N. W. 175, 41 L. R. A. 624) ; *State, ex rel. Jameson,* v. *Denny,* 118 Ind. 382 (21 N. E. 252, 4 L. R. A. 79) ; 1 McQuillen on Municipal Corporations, § 173.

The act in question is distinctive in the particulars that it is what is sometimes termed "city legislation" (relating only to cities) deals exclusively with a matter of municipal concern, and is class legislation, to the third degree, in that it applies only to a class of cities having full-paid members of fire departments, all others including those having only part-paid members

of their fire departments being omitted, and relates only to a particular class of employees in the cities to which it applies, confining its aplication to only such "officers and men" in fire departments as are receiving "full pay." This is not a law which seeks to protect a certain class of laborers, because of their sex, age, or other special conditions, against the imposition of long hours of steady, daily toil in dangerous or unwholesome environments detrimental to health. Those to whom it relates are not of that class nor so employed. Conceding the duty they are employed to perform when the emergency for that service arises is strenuous and dangerous, demanding particular training and ability, those experiences are not the regular routine of their daily life. During much of the time of their employment their duties are, if not light, at least neither hazardous nor strenuous, and their environments are neither dangerous nor unhealthy. The law is not directed to bettering their surroundings or shortening their daily hours of duty. Its purpose is to give that class of employees vacations from their employment and compel the municipality to pay them full wages when absent. The mental and physical strain, hazards of the calling, and impairment of health arising from the character of the employment would seem to fall with equal force on that class in the service designated "call men" who do not receive "full pay" but are allowed to work at other employment in the vicinity of their respective hose houses, in which they are required to sleep, and who, equally with the others so far as shown, are required to respond to alarms which call them to the only strenuous and dangerous service for which firemen are employed; but these men are excluded from the class to which the law is made applicable. If it were conceded that the act is a proper exercise of the police power of the State, because essential to the public welfare

in protection of the health, morals, and safety of employees engaged in a dangerous or unhealthy calling, it fails to protect all alike and discriminates between those in the same employment, exposed to like risks and dangers.

But, aside from these infirmities, the act as framed bears the brand of special legislation in the interest of those it directly benefits, rather than a beneficent general law in the public interest enacted under a legitimate exercise of police power for the general welfare of the people throughout the State at large, and is a palpable attempt to regulate the internal affairs of cities, amounting to an unwarranted interference with their rights of local self-government under those principles declared upon that subject in *People* v. *Hurlbut* and *Davidson* v. *Hine, supra,* since recognized, emphasized, and enlarged in article 8 of our latest Constitution.

The judgment is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, and BROOKE, JJ., concurred. FELLOWS, J., did not sit.