BERRIEN COUNTY v STATE OF MICHIGAN

Docket No. 72521. Submitted April 17, 1984, at Lansing.—Decided August 20, 1984.

Berrien County, and David Peterson, as a taxpayer and chairman of the Berrien County Board of Commissioners, brought an action against the State of Michigan, James Blanchard, Governor, Agnes Mary Mansour, Director of the Department of Social Services, and Robert Bowman, State Treasurer, seeking to enjoin the defendants from offsetting certain payments required of the county in connection with Medicaid payments for nursing home services provided in Berrien County Hospital's long-term care unit against the state's payment of revenue-sharing funds. Plaintiffs alleged that 1980 PA 391, requiring the county to reimburse the state for a percentage of the Medicaid payments received, violated their right to equal protection; that the offset in revenue-sharing funds violated Michigan law; that hospital chronic or long-term care units were not subject to the reimbursement provision; that the units were not subject to the reimbursement provision; that the defendants' calculation of the reimbursement amount was improper and that the act violated the Headlee Amendment to the constitution. The Ingham Circuit Court, Robert Holmes Bell, J., granted summary judgment in favor of the defendants, finding that plaintiffs failed to state a claim upon which relief could be granted. Plaintiffs appealed. *Held:*

1. The county, as a local governmental unit of the state, has no privileges vis-à-vis the state. The Equal Protection Clause does not apply to the county's claim. Plaintiff Peterson lacks standing to assert his equal protection claim, as he has failed to

REFERENCES FOR POINTS IN HEADNOTES

[1] 16A Am Jur 2d, Constitutional Law § 742.
[2] 74 Am Jur 2d, Taxpayers' Actions § 57.
[3, 7] 79 Am Jur 2d, Welfare Laws §§ 38, 39.
[4] 2 Am Jur 2d, Administrative Law §§ 233, 656.
[5] 73 Am Jur 2d, Statutes § 1.
[6] 73 Am Jur 2d, Statutes § 14.
[8] 73 Am Jur 2d, Statutes § 137.

allege with particularity how the reimbursement system will cause him to suffer loss or damage as a taxpayer.

2. The act applies not to "nursing homes" but to facilities licensed to provide nursing home services. Furthermore, a hospital long-term care unit is defined elsewhere as a nursing care facility owned and operated by and as part of a hospital. The act clearly applies to a hospital long-term care unit.

3. Calculation of the reimbursement amount by inclusion of so-called "institutional code days" is proper. The defendants' construction of the statutory term "eligible persons" to mean persons for whom benefits are contingent upon payment by those persons for days of care before entitlement to Medicaid benefits is not improper. Furthermore, the plaintiffs' allegation that the defendants' method of calculation provides the state with a "profit" is without merit.

4. The operation of a county hospital, and the provision of "nursing home services" therein, is a permissive service, not one required by the state. Therefore, the Headlee Amendment to the constitution does not apply to the state's funding of the hospital through the Medicaid program. Furthermore, the payments at issue are not "necessary costs" within the meaning of the Headlee Amendment.

5. Because the provisions of the 1981 and 1982 Department of Social Services appropriations acts which authorize the setoff of county obligations against state revenue-sharing payments effectively alter the mandatory payment provision of the revenue-sharing act by reference to its title only, they are unconstitutional and may not be invoked to support the setoff.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. MUNICIPAL CORPORATIONS — EQUAL PROTECTION.

Municipalities, being creatures of the state, have no privileges vis-à-vis the state; a county's challenge to a statute on equal protection grounds does not state a claim upon which relief may be granted.

2. PLEADING — STANDING — TAXPAYER'S SUIT.

A plaintiff, in order to have standing to maintain a suit as a taxpayer against a governmental unit, must allege with particularity how an alleged illegal act will cause him to suffer loss or damage as a taxpayer.

3. SOCIAL SERVICES — MEDICAID — NURSING HOME SERVICES — COUNTY HOSPITALS.

A statute requiring reimbursement to the state of certain Medi-

caid payments for nursing home services by facilities "owned by the county and licensed to provide nursing home services" applies to a county hospital's long-term care unit; the act does not require the facility to be licensed as a nursing home but rather that it be licensed to provide nursing home services (MCL 400.109; MSA 16.490[19]).

4. Administrative Law — Judicial Construction — Statutes.

A court must accord due deference to the construction placed upon legislation by the agency responsible for the administration of that legislation.

5. Constitutional Law — State Law — Statutes — Agency Rules.

A "state law", for purposes of the constitutional requirement that the state not reduce its proportion of the payment of necessary costs of existing services required of local governmental units by state law, is a state statute or agency rule (Const 1963, art 9, § 29; MCL 21.234[4]; MSA 5.3194[604][4]).

6. Constitutional Law — Requirement of State Law — County Hospitals.

A statute or rule allowing a local unit of government to perform an activity or service, but not requiring it, it not a requirement of state law for purposes of the constitutional restriction on reductions of state law; the operation of a county hospital, and the functions thereof, are permissive, i.e., not required by state law (Const 1963, art 9, § 29; MCL 21.234[5][h], 331.202; MSA 5.3194[604][5][h], 14.1150[2]).

7. Social Services — County Hospitals — Medicaid — Necessary Costs — Constitutional Law.

So-called "maintenance of effort" payments required to be made by county hospitals in regard to the receipt of Medicaid payments for nursing home services are not "necessary costs" within the meaning of the Headlee Amendment to the Michigan Constitution (Const 1963, art 9, § 29; MCL 21.233[6], 400.109[c]; MSA 5.3194[603][6], 16.490[19][c]).

8. Constitutional Law — Social Services — Revenue Sharing — Amendment of Statute by Reference.

No law shall be revised, altered or amended by reference to its title only; therefore, Department of Social Services appropriations bills which authorize the state to offset county obligations related to certain Medicaid payments against the payment of revenue-sharing funds to the counties are unconstitutional, since they refer to the revenue-sharing act by title only and effectively amend that act, and may not be invoked to support

such a setoff (Const 1963, art 4, § 25; 1981 PA 35, § 61, 1982 PA 257, § 43; MCL 141.911[411]; MSA 5.3194[411]).

*Thomas E. Nelson,* Assistant Prosecuting Attorney, for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Janis Meija* and *William K. Basinger,* Assistants Attorney General, for defendants.

Before: D. E. HOLBROOK, JR., P.J., and CYNAR and T. GILLESPIE,* JJ.

PER CURIAM. In this case plaintiffs challenge the Medicaid reimbursement system implemented by the state pursuant to 1980 PA 391, amending MCL 400.109; MSA 16.490(19). Plaintiffs appeal as of right from an order of summary judgment entered in favor of defendants.

The instant dispute concerns the operation of certain Medicaid provisions covering nursing home services in county-operated medical care facilities and hospital long-term care units (LTCUs), also known as chronic care units. At issue is the Medicaid funding to Berrien County Hospital's LTCU. Prior to 1980, funding or reimbursement for days of care provided to Medicaid recipients in such facilities was made by Medicaid at less than the facility's per diem cost. The "old rate" was a prospective rate based on previously established annual cost figures, including an inflationary adjustment. A limit on the amount of reimbursement from Medicaid was set at the cost level of the 80th percentile of all providers, with the facilities whose costs were in the upper 20% of all providers of a given class being considered inefficient. In

---

* Circuit judge, sitting on the Court of Appeals by assignment.

1980, however, the Legislature enacted 1980 PA 391, effective January 7, 1981, which raised the reimbursement rate to such a facility to its actual cost but also required that the county make so-called "maintenance-of-effort" (MOE) payments to the state in reimbursement of 90% of the additional amount paid in the new, higher Medicaid payments. 1980 PA 391, § 1, MCL 400.109; MSA 16.490(19), provides in relevant part:

"(c) * * * The state department shall pay for nursing home services in accordance with the state plan for medical assistance adopted pursuant to section 10 and approved by the United States department of health and human services. A county shall reimburse the state at 90% of the county rate for each day of nursing home services provided to eligible persons in facilities owned by the county and licensed to provide nursing home services. As used in this subdivision:

"(i) 'County rate' means the difference between the routine service cost per diem and the prospectively established rate, as determined pursuant to the state plan for medical assistance, for the county's full fiscal year immediately before the effective date of this subparagraph, or the second full fiscal year of operation for a recently constructed county-owned facility, as defined in the state plan for medical assistance, whichever occurs later, adjusted by the rate of change in routine cost per diem for each subsequent county fiscal year.

"(ii) 'Routine service cost per diem' means the routine service cost divided by the total number of inpatient days, or the variable cost limit plus the plant cost component, whichever is less. Routine service cost, variable cost limit, and plant cost component as used in this subparagraph shall be determined pursuant to the state plan for medical assistance."

Plaintiff county refused to make the MOE payment required by the statute. As a result, defendants notified the Berrien County Treasurer that

they were going to take an offset against the county's revenue-sharing receipts in November, 1982, to reimburse the state for plaintiffs' unremitted MOE payments. Thereafter, in order to prevent further offsets against the next quarterly revenue-sharing payment, plaintiffs brought suit against the state and certain departments thereof, alleging that 1980 PA 391 violated their right to equal protection of the law; that the offset from revenue-sharing payments in the amount of the county's MOE obligation violated Michigan law; that hospital CCUs were not subject to the MOE reimbursement provisions; that the inclusion of "institutional code days" (ICDs) (those days of care paid for by individual patients before they became entitled to Medicaid payments) in the calculation of the MOE was improper; and that 1980 PA 391 violated the Headlee Amendment to the Michigan Constitution, Const 1963, art 9, §§ 25 and 29. A temporary restraining order was issued on February 15, 1983, restraining further offsets against revenue sharing, and an order to show cause why a preliminary injunction should not issue was set for April 6, 1983.

Defendant filed a response to the order to show cause and moved for summary judgment. At the hearing on the order to show cause held on April 6, 1983, the lower court dissolved the temporary restraining order and denied preliminary injunctive relief. Subsequently, plaintiffs filed a cross-motion for summary judgment, with both motions for summary judgment being heard on June 7, 1983. At the June 7 hearing, the lower court granted defendants' motion for summary judgment, finding that plaintiffs' complaint failed to state a claim upon which relief could be granted, pursuant to GCR 1963, 117.2(1).

I

*Does the MOE provision of 1980 PA 391 violate plaintiffs' rights to equal protection of the law?*

Plaintiffs maintain that equal protection is violated as to Berrien County because county hospitals are arbitrarily required to reimburse the state for a portion of Medicaid funding they receive, while other municipal hospitals are not so required, and as to David Peterson because he may suffer increased health care expenses.

Defendants correctly assert that in *Williams v Mayor & City Council of Baltimore,* 289 US 36, 40; 53 S Ct 431; 77 L Ed 1015 (1933), the United States Supreme Court held that a municipal corporation "has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator", *i.e.,* the state. This statement was made in the context of an equal protection challenge.

Moreover, in *DeWitt Twp v Clinton County,* 113 Mich App 709, 717; 319 NW2d 2 (1982), this Court, after citing *Williams, supra,* and in response to an equal protection challenge under the state constitution, stated that there is "no reason why a local governmental unit's assertion of equal protection and due process rights under our state constitution should lead to a different result". Thus, equal protection challenges against the state by a municipality have been rejected under both federal and Michigan constitutions.

Plaintiffs cite language from *Chicago v Sturges,* 222 US 313; 32 S Ct 92; 56 L Ed 215 (1911), in support of their position that there are exceptions to the rule that municipalities have no equal protection rights. *Sturges,* however, was decided

long before *Williams* made the rather definitive statement that municipalities, being creatures of the state, have no privileges vis-à-vis the state. Furthermore, the notion that the Equal Protection Clause "protect[s] people, not states" and, therefore, also does not apply to municipalities, was again more recently stated in *Pennsylvania v New Jersey,* 426 US 660, 665; 96 S Ct 2333; 49 L Ed 2d 124 (1976). Plaintiff county's equal protection challenge does not state a claim upon which relief may be granted.

As to plaintiff Peterson, his claim is that the state's requirement that county hospitals remit MOE payments to the state affects him indirectly as a taxpayer and perhaps as a potential patient because essential services may be reduced. This, plaintiffs maintain, is a matter which should have been developed factually, so that summary judgment was improper. Although it cannot be gainsaid that plaintiff Peterson enjoys equal protection rights, his assertions are purely speculative. First, he is not a Medicaid recipient who has been adversely affected by implementation of the MOE provisions. Peterson has also failed to allege with particularity how the MOE system will cause him to suffer loss or damage as a taxpayer. *Menendez v Detroit,* 337 Mich 476, 482; 60 NW2d 319 (1953); *Killeen v Wayne County Civil Service Comm,* 108 Mich App 14, 18; 310 NW2d 257 (1981). We conclude that this individual plaintiff lacks standing to assert his equal protection claim, having failed to show a concrete interest "in the outcome of this litigation sufficient to invoke the controversy-resolving powers of the judiciary". *Michigan License Beverage Ass'n v Behnan Hall, Inc,* 82 Mich App 319, 325; 266 NW2d 808 (1978). See also *Rayford v Detroit,* 132 Mich App 248; 347 NW2d 210 (1984);

*Karrip v Cannon Twp,* 115 Mich App 726, 732-734; 321 NW2d 690 (1982).

## II

*Does the MOE provision, by its terms, apply to plaintiff county's long-term care units?*

Act 391 provides that counties must reimburse the state at the specified rate for nursing home services by facilities "owned by the county and licensed to provide nursing home services". Plaintiffs would construe the act as excluding county LTCUs. Plaintiffs point to MCL 333.20109(1); MSA 14.15(20109)(1) for support:

> "Sec. 20109. (1) 'Nursing home' means a nursing care facility, including a county medical care facility, *but excluding a hospital* or a facility created by Act No. 152 of the Public Acts of 1885, as amended, being sections 36.1 to 36.12 of the Michigan Compiled Laws, which provides organized nursing care and medical treatment to 7 or more unrelated individuals suffering or recovering from illness, injury, or infirmity." (Emphasis added.)

Further, MCL 333.21711(2); MSA 14.15(21711)(2) provides:

> "(2) 'Nursing home', 'nursing center', 'convalescent center', 'extended care facility', or a similar term or abbreviation shall not be used to describe or refer to a health facility or agency *unless the health facility or agency is licensed as a nursing home* by the department under this article." (Emphasis added.)

Accordingly, plaintiffs posit that a nursing home does not include a hospital or facility which, like a county LTCU, is not licensed as a nursing home.

Defendants correctly argue, however, that Act 391 does not require a facility to be licensed *as a*

*nursing home,* but rather, that it be licensed *to provide nursing home services.* They also direct this Court's attention to MCL 333.20106(6); MSA 14.15(20106)(6), which states:

"(6) 'Hospital long-term care unit' *means a nursing care facility,* owned and operated by and *as part of a hospital,* providing organized nursing care and medical treatment to 7 or more unrelated individuals suffering or recovering from illness, injury, or infirmity". (Emphasis added.)

Thus, a hospital, without being licensed as a "nursing home", is clearly contemplated to provide nursing home services as a "nursing care facility".

Plaintiffs also contend that "nursing home services" (not being defined anywhere) must refer to services provided by nursing homes, especially since MCL 333.21711(2) and (3); MSA 14.15(21711)(2) and (3), respectively, require licensure in order for any agency or facility to use the term "nursing home" or the like and licensure for services normally provided in a nursing home. But these provisions are less specific than MCL 333.20106(6); MSA 14.15(20106)(6), which recognizes that an LTCU may be operated as part of a hospital and that such may provide "organized nursing care". Our review of the foregoing provisions persuades us that the MOE provisions were intended to be applicable to hospital LTCUs. The lower court did not err in rejecting plaintiffs' proposed construction of Act 391.

## III

*Was the MOE calculation erroneous in that it included "institutional code days"?*

Plaintiffs complain that in calculating the MOE

payment charged to plaintiff county, defendants inappropriately included institutional code days, or ICDs. ICDs, again, are days of care which must be paid by patients as a requisite to receipt of Medicaid benefits. The issue turns on construction of the following language from Act 391:

"A county shall *reimburse* the state at 90% of the county rate for *each day* of nursing home services provided to *eligible persons*". (Emphasis added.) MCL 400.109(c); MSA 16.490(19)(c).

Defendants have construed the phrase "eligible persons" in the preceding context to include persons for whom benefits are contingent upon payment of their ICD obligation; important to this construction is the fact that under the Medicaid program eligibility is determined in advance.

We note that this issue must be reviewed with respectful consideration of the Department of Social Service's interpretation, since due deference is accorded the construction placed upon legislation by the agency responsible for its administration. *Mutual Life Ins Co of New York v Ins Bureau,* 121 Mich App 386, 391; 328 NW2d 638 (1982). We find defendant's interpretation of "eligible persons" within the meaning of MCL 400.109(c); MSA 16.490(19)(c) to be eminently reasonable.

Plaintiffs also contend that the MOE payment should not include ICDs because the statutory language provides for a reimbursement. Plaintiffs maintain that, because the patient must pick up the tab for ICDs, recoupment of costs by the state based upon ICDs provides the state with a profit rather than a reimbursement. Both plaintiffs and defendants have set forth mathematical illustrations in an attempt to establish their respective positions. Plaintiffs address the scheme in the

context of how it would operate if ICD obligations were not included; however, they do not attempt to compare the present scheme with the former "prospective rate", as do defendants. This latter comparison illustrates that the Medicaid contribution is greater under the present system and that the MOE payment essentially equalizes the burden imposed under the present and former methods. Due to the increased Medicaid rate per diem, the patient's ICD contribution covers a lesser number of days than it previously did, requiring Medicaid to pay a correspondingly greater number of days per month, and at a higher rate. The result is that the state pays a greater amount in gross, so that there can be no claim that it is recouping money which it never expended, *i.e.,* that it is making a "profit".

Under this broader view of the Medicaid program, we do not perceive inclusion of ICDs in the MOE calculation as inconsistent with the statutory reference to reimbursement. We sustain the lower court's conclusion on this issue.

## IV

*Does the MOE system as applied to plaintiff county violate the Headlee Amendment, Const 1963, art 9, §§ 25 and 29?*

Const 1963, art 9, § 29 provides:

"*The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law.* A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is

made and disbursed to pay the unit of Local Government for any necessary increased costs. The provision of this section shall not apply to costs incurred pursuant to Article VI, Section 18." (Emphasis added.)

Under this provision, the state must continue to finance, at the same level, that portion of a state-mandated service or activity which it was financing for local units of government on December 22, 1978, the date the Headlee Amendment went into effect. In this connection, the case *sub judice* involves the questions of whether Medicaid funding through MOE payments by the county amounts to a reduction of state financing or, alternatively, an increase in an existing state-mandated activity within the meaning of the Headlee Amendment, and if so, whether the increased costs are "necessary costs" within the meaning of § 29.

To begin, MCL 21.234(4); MSA 5.3194(604)(4), part of the act passed by the Legislature in 1979 to implement the Headlee Amendment, provides that "state law" means a state statute or agency rule. Further, MCL 400.109(c); MSA 16.490(19)(c)—Act 391—states that the county *shall* reimburse the state at the prescribed rate. Thus, it seems clear that Act 391 is a "requirement of state law". The central issue here, however, is whether this requirement increases the *necessary costs* of an *existing requirement.* In this connection, this Court's recent decision in *Ann Arbor v Michigan,* 132 Mich App 132; 347 NW2d 10 (1984), supports a conclusion that nursing home services as described in Act 391 are not "requirements of state law", so that a requirement that the county reimburse the state would not run afoul of the Headlee Amendment. In *Ann Arbor, supra,* pp 136-137, this Court stated:

"This Court has not yet interpreted the meaning of the phrase 'activity or service required * * * by state law' as used in the above provision. Under MCL 21.234(4); MSA 5.3194(604)(4), which implements this constitutional provision, however, 'state law' is defined as 'a state statute or agency rule'. *MCL 21.234(5)(h); MSA 5.3194(604)(5)(h) provides that a statute or rule allowing a local unit of government to perform an activity or service, but not requiring it, is not a 'requirement of state law'.*

"Because it is dispositive, we address only the issue of whether the furnishing of fire protection services by plaintiff municipal corporations is an activity required by state law and hold that it is not.

"*Although charter townships and townships are authorized by statute to provide fire protection,* MCL 41.181, 41.801, 42.13; MSA 5.45(1), 5.2640(1), 5.46(13), *each of these statutes is clearly permissive rather than mandatory.*

"The home rule cities act, MCL 117.1 *et seq.;* MSA 5.2071 *et seq.,* requires that such cities provide in their charters '[for] the public peace and health and for the safety of persons and property'. MCL 117.3(j); MSA 5.2073(j). Nothing in the act, however, specifically requires that home rule cities provide fire protection. Indeed, fire protection has long been considered a purely local matter. *Davidson v Hine,* 151 Mich 294; 115 NW 246 (1908). This conclusion is also supported by other statutes which recognize that it is optional for cities to have fire departments." (Emphasis added.)

Relevant here is MCL 331.202; MSA 14.1150(2), which provides that "it shall be *competent* and lawful for the board of supervisors of any county * * * to acquire, own, construct, establish, maintain, and operate a hospital * * *. The board of supervisors shall also determine the sum or sums of money to be appropriated for the acquisition, ownership, construction, establishment, maintenance, operational and equipment purposes." Thus, such hospitals are permissive, and once

established, the county is given the authority to operate them. If the running of the hosptial itself is permissive, a function thereof, *i.e.,* Medicaid-funded nursing home services, may also be considered permissive.

Alternatively, an increase in a state-mandated activity must have the effect of reducing the state-financed proportion of "necessary costs". The Legislature has defined "necessary cost" in MCL 21.233(6); MSA 5.3194(603)(6) as follows:

"(6) 'Necessary cost' means the net cost of an activity or service provided by a local unit of government. The net cost shall be the actual cost to the state if the state were to provide the activity or service mandated as a state requirement, unless otherwise determined by the legislature when making a state requirement. Necessary cost does not include the cost of a state requirement if the state requirement satisfies 1 or more of the following conditions:

"(a) The state requirement cost does not exceed a de minimus cost.

"(b) The state requirement will result in an offsetting savings to an extent that, if the duties of a local unit which existed before the effective date of the state requirement are considered, the requirement will not exceed a de minimus cost.

"(c) The state requirement imposes additional duties on a local unit of government which can be performed by that local unit of government at a cost not to exceed a de minimus cost.

"(d) The state requirement imposes a cost on a local unit of government that is recoverable from a federal or state categorical aid program, or other external financial aid. A necessary cost excluded by this subdivision shall be excluded only to the extent that it is recoverable."

The exclusions from "necessary costs" contained in subdivisions (6)(b) through (6)(d) above indicate

that the costs involved here are not "necessary" within the meaning of the Headlee Amendment. To begin with, the MOE obligation is offset by increased payments to the hospital. Plaintiffs argue that the county cannot be equated with the hospital so that there is no offset. We do not find this argument persuasive. MCL 331.202; MSA 14.1150(2) provides the county with the authority to establish, maintain, and operate a county hospital. The county also determines the amount of funds to be appropriated therefor. And, pursuant to MCL 331.203 and 331.204; MSA 14.1150(3) and 14.1150(4), the county has the authority to raise necessary funds through taxation for the county facility and to appoint the board of trustees for the hospital. Thus, it cannot be maintained that the county is not the beneficiary of the offset in savings created by an increased per diem Medicaid rate. We find no violation of the Headlee Amendment to the Michigan Constitution.

## V

*Was defendants' use of an offset against revenue-sharing payments in order to collect plaintiffs' MOE obligation improper or in violation of Const 1963, art 4, §§ 24 and 25?*

Section 11 of the State Revenue Sharing Act of 1971, MCL 141.911; MSA 5.3194(411), couches in mandatory terms the payment of revenue-sharing funds to the counties:

"Sec. 11. *Notwithstanding any other provision of law to the contrary,* the department of administration *shall cause to be paid* during each August, November, February and May, to counties on a per capita basis the collections from the state income tax as certified by the department of treasury for the quarter periods ending

the prior June 30, September 30, December 31 and March 31 which are available for distribution to and retention by counties." (Emphasis added.)

However, the 1981 and 1982 Department of Social Services appropriations acts specifically provide for offsets against revenue-sharing payments:

"The state shall be authorized to offset county obligations from payments made to counties under section 11 of Act No. 140 of the Public Acts of 1971, being section 141.911 of the Michigan Compiled Laws." 1981 PA 35, § 61; 1982 PA 257, § 43.

Plaintiffs have advanced several arguments to the effect that these offset provisions are illegal or unconstitutional; we find one of these arguments dispositive. Plaintiffs claim that these provisions affront Const 1963, art 4, § 25, which provides:

"No law shall be revised, altered or amended by reference to its title only. The section or sections of the act altered or amended shall be reenacted and published at length."

It is plaintiffs' position that had the Legislature wished "to place a contingency upon the county's right to receive revenue sharing under MCL 141.911, then the same would require an amendment of the applicable portions of the state's revenue-sharing legislation to accomplish the same, and could not constitutionally be accomplished through adding a phrase to a section buried within a Department of Social Services Appropriation bill". Defendants do not address this argument.

In this case the thrust of MCL 141.911; MSA 5.319(411) seems clear, and is, in our view, altered by the above-quoted setoff language from

the appropriations bills. Since the bills amended the revenue-sharing provision by reference to its title only, they are unconstitutional and may not be invoked to support the setoff of MOE payments against the state's revenue-sharing obligations.

Affirmed in part; reversed in part and remanded for proceedings not inconsistent with this opinion. No costs.